**ANDERSON, Appellant,**

v.

**EYMAN et al., Appellees.**

[Cite as *Anderson v. Eyman,* 180 Ohio App.3d 794, 2009-Ohio-102.]

Court of Appeals of Ohio,
Fifth District, Fairfield County.

No. 07CA69.

Decided Jan. 7, 2009.

Sterling Christopher Anderson, pro se.

Christopher L. Lardiere, for appellees.

EDWARDS, Judge.

{¶ 1} Plaintiff-appellant, Christopher Anderson, appeals from the November 15, 2007 judgment entry of the Fairfield County Court of Common Pleas, which denied plaintiff-appellant's motion for summary judgment and granted defendants-appellees Kathy, Donald, and Mahala Eyman's cross-motion for summary judgment. Plaintiff-appellant argues that the trial court erred in granting defendants-appellees' cross-motion for summary judgment as it pertained to his causes of action for malicious criminal prosecution and intentional infliction of emotional distress.

## STATEMENT OF FACTS AND CASE

{¶ 2} In 1997 and 1998, various criminal charges were filed against appellant. These charges included an indictment on four counts of sexual battery and ten counts of contributing to the unruliness of a minor child. Additionally, 14 other charges of contributing were filed at various times in the juvenile court.

{¶ 3} The underlying impetus for filing the criminal charges was the relationship between appellant and Mahala Eyman. Mahala is the daughter of appellees Donald and Kathleen Eyman. The relationship began in January 1996, when appellant was employed as a field faculty member and assistant professor at Ohio State University. Appellant's responsibilities included overseeing the 4–H program. Mahala was an active youth in the 4–H program. At the beginning of the relationship, Mahala was approximately 16 years of age, and appellant was approximately 47 years of age.

{¶ 4} In March 1996, Mahala's parents became concerned about the nature of the relationship. Mahala's parents took steps to limit the relationship by writing a personal letter to appellant and notifying Ohio State University officials about their concerns. In September 1996, appellant agreed to limit his contact with Mahala. Ohio State University also advised appellant to refrain from any activities that brought him in contact with troubled youth including Mahala.

{¶ 5} On October 11, 1996, appellant and Mahala were found by law-enforcement officers parked in a car outside appellant's office. When deputies arrived, they observed appellant hugging Mahala and patting her stomach. The responding officer reported that appellant and Mahala were in a secluded area of the parking lot, with the car seats reclined, and that their pants were unzipped. Appellant and Mahala denied any inappropriate conduct.

{¶ 6} As a result of the October 11 incident, the university board of trustees initiated termination proceedings against appellant. At the conclusion of the administrative proceedings, appellant's employment with the university was terminated.

{¶ 7} In January 1997, the prosecutor prepared a complaint against appellant for contributing to the unruliness of a minor child on October 11, 1996. The complaint was signed by appellee Don Eyman.

{¶ 8} Mahala subsequently disclosed to her therapist and law-enforcement investigators that appellant had caused her to engage in sexual conduct on several different occasions.

{¶ 9} As a result of an ongoing criminal investigation of appellant's relationship with Mahala, Prosecutor Gregg Marx presented a case against appellant to the grand jury. The grand jury returned an indictment against appellant on four counts of sexual battery and ten counts of contributing to the unruliness of a

minor child. Additionally, 14 other charges of contributing were filed at various times in the juvenile court. Ultimately, the appellant was either acquitted of the charges and/or the charges were dismissed by the state.

{¶ 10} In May 1999, in Fairfield County Court of Common Pleas case No. 99CV00241, appellant filed a complaint against appellees, setting forth several causes of action, including malicious prosecution, intentional infliction of emotional distress, invasion of privacy, and civil conspiracy.

{¶ 11} In January 2005, appellant voluntarily dismissed the civil complaint. On December 20, 2005, appellant refiled the complaint in case No. 05CV1110, setting forth the same causes of action.

{¶ 12} In both complaints (i.e., the original complaint and the refiled complaint), the appellant alleged that appellees Donald and Kathy Eyman and their daughter, appellee Mahala Eyman, had maliciously accused appellant of having an intimate and ongoing relationship with Mahala and initiated or caused to be initiated criminal charges against him out of malice, hatred, and gross ill will. Appellant argued that police reports and statements were intentionally falsified by appellees in order to fabricate probable cause for the purposes of pursuing criminal prosecutions in an effort to destroy appellant's personal and professional life. Appellant further argued that as a result of appellees' actions, he suffered emotional pain and suffering, extreme embarrassment, and humiliation.

{¶ 13} On January 6, 2006, appellees filed a joint answer and counterclaim for malicious prosecution, intentional infliction of emotional distress, practicing medicine and/or counseling without a license, invasion of privacy, negligent infliction of emotional distress, and negligence. In their answer, appellees denied the allegations in the complaint and claimed that appropriate prosecutorial and law-enforcement agencies had initiated and pursued charges against appellant.

{¶ 14} On January 10, 2006, appellant filed a motion to dismiss appellees' counterclaims or, in the alternative, a motion for summary judgment.

{¶ 15} On July 17, 2006, the trial court filed an amended scheduling order, which required the parties to file any dispositive motions on or before April 30, 2007.

{¶ 16} On April 16, 2007, appellant, acting pro se, filed a second motion for summary judgment, arguing that he was entitled to judgment as a matter of law on the claims set forth in his complaint, including malicious prosecution and intentional infliction of emotional distress. Appellant's pro se motion for summary judgment was approximately 97 pages in length. The trial court noted, and we agree, that the majority of the 97–page motion included a nonevidentiary recitation by the appellant of the events that he believed had occurred and contributed to the alleged malicious prosecution.

{¶ 17} On April 27, 2007, prior to the deadline for dispositive motions, appellees moved the court for an extension of time to file a response in opposition to appellant's 97–page motion for summary judgment and an extension of time to file a cross-motion for summary judgment. On April 30, 2007, over appellant's objection, the trial court granted appellees' motion for an extension of time and ordered appellees to file their response and cross-motion for summary judgment on or before May 23, 2007. As ordered, on May 23, 2007, appellees filed a memorandum contra appellant's motion for summary judgment and a cross-motion for summary judgment.

{¶ 18} On May 25, 2007, appellant filed a pro se reply to appellees' memorandum contra, a motion to dismiss appellees' cross-motion for summary judgment as being both untimely filed and improper pursuant to the doctrine of res judicata, and a memorandum contra appellees' cross-motion for summary judgment.

{¶ 19} On November 15, 2007, the court considered the pending motions and issued a final judgment. Pertinent to this appeal, the trial court denied appellant's motion to dismiss appellees' cross-motion for summary judgment. The trial court denied appellant's motion for summary judgment on the claims for malicious prosecution and intentional infliction of emotional distress. Finally, the trial court granted appellees' cross-motion for summary judgment on appellant's complaint, finding, in part, that there were no questions of fact as to appellant's claims for malicious prosecution and intentional infliction of emotional distress and that appellees were entitled to judgment as a matter of law. It is from this judgment that appellant now appeals, setting forth the following assignments of error:

{¶ 20} "I. The visiting judge erred in granting defendants-appellees' motion for summary judgment on plaintiff-appellant's claims.

{¶ 21} "II. The visiting judge erred in denying plaintiff-appellant's motion for summary judgment on plaintiff-appellant's claims."

## I, II

{¶ 22} Appellant's first and second assignments of error are related and shall be considered together. Appellant argues that the trial court erred in denying his motion for summary judgment on the claims for malicious prosecution and intentional infliction of emotional distress and/or that the trial court erred in granting summary judgment in favor of appellees and finding that there was no question of material fact. Appellant also argues that the trial court abused its discretion in denying his motion to dismiss appellees' cross-motion for summary judgment.

{¶ 23} We shall first address appellant's argument that the trial court abused its discretion and/or erred in denying the motion to dismiss appellees' cross-motion for summary judgment. First, appellant argues that the motion was untimely filed and the trial court abused its discretion in granting appellees an extension of time beyond the dispositive-motion deadline.

{¶ 24} The decision whether to grant a motion for extension of time lies within the broad discretion of the trial court and will be reversed on appeal only for an abuse of discretion. *Miller v. Lint* (1980), 62 Ohio St.2d 209, 16 O.O.3d 244, 404 N.E.2d 752. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 25} On April 27, 2007, prior to the April 30, 2007 deadline for filing dispositive motions, appellees filed a motion for an extension of time to file a cross-motion for summary judgment. The trial court granted appellees' motion for an extension and ordered appellees to file their summary-judgment motion or before May 23, 2007. Appellees filed their motion for summary judgment on May 23, 2007.

{¶ 26} There is nothing to establish that the trial court's attitude in granting the appellees' motion for an extension of time and/or in denying appellant's motion to dismiss for an untimely filing was unreasonable, arbitrary, or unconscionable. Furthermore, in accordance with the trial court's ruling, appellees timely filed their motion for summary judgment.

{¶ 27} Second, appellant argues that the motion to dismiss should have been granted because appellant's summary-judgment motion is barred by the doctrine of res judicata, i.e., collateral estoppel. Appellant argued that in the previously filed case, case No. 99CV00241, appellees filed a motion for summary judgment based on the same facts and legal theories presented in the current motion for summary judgment. Appellant argues that in the prior case, appellees' summary-judgment motion was denied by the trial court. Appellant argues that since the identical issues were addressed in the motion for summary judgment filed in the prior action, appellees are barred from raising the same factual and legal issues in a summary-judgment motion in the current case. We disagree.

{¶ 28} "The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226. The doctrine of collateral estoppel "holds that a fact or a point that was actually and directly at issue in a previous action, and was

passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140; see also *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph three of the syllabus. Essentially, collateral estoppel prevents parties from relitigating facts and issues that were fully litigated in a previous case. *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 64, 765 N.E.2d 345. However, in order for the doctrine to apply, the issues must have been determined by a final, appealable order. *State v. Williams* (1996), 76 Ohio St.3d 290, 294, 667 N.E.2d 932.

{¶ 29} In the prior case, appellees filed a motion for summary judgment on the claims set forth in appellant's complaint, including malicious prosecution and intentional infliction of emotional distress. Appellees' summary judgment was denied in the prior case, wherein the trial court found that there were genuine issues of material fact. Appellees appealed the denial to this court. On appeal, this court held that that it lacked jurisdiction to consider the denial of summary judgment because it was not a final, appealable order. See *Anderson v. Eyman* (Dec. 14, 2000), Fairfield App. No. 00CA26, 2000 WL 1863125.

{¶ 30} Thereafter, appellant voluntarily dismissed his complaint in the prior action pursuant to Civ.R. 41. As a result of appellant's voluntary dismissal, the previous interlocutory orders, including the denial of summary judgment, were dissolved. Therefore, appellant is precluded from raising the doctrine of collateral estoppel in this subsequent proceeding. See *Denham v. New Carlisle* (1999), 86 Ohio St.3d 594, 597, 716 N.E.2d 184 (holding that all prior interlocutory orders are dissolved after a dismissal); *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109.

{¶ 31} Having determined that appellees' summary-judgment motion was timely filed and that the doctrine of res judicata does not apply, we shall now address the trial court's grant of summary judgment in favor of appellees and against appellant on the causes of action for malicious prosecution and intentional infliction of emotional distress.[1]

{¶ 32} The review of a trial court's decision on a motion for summary judgment presents this court with the unique opportunity of reviewing the evidence de novo. *Smiddy v. Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36, 30 OBR 78, 506 N.E.2d 212; *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671

---

1. The trial court also granted summary judgment to appellees on appellant's claims for invasion of privacy and civil conspiracy, but appellant has not addressed the grant of summary judgment on these causes of action on appeal.

N.E.2d 241. Upon de novo review, this court must independently examine the trial court record to determine whether the grant of summary judgment is appropriate. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786.

{¶ 33} Civ.R. 56(C) provides:

{¶ 34} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶ 35} Thus, a trial court may not grant summary judgment unless the evidentiary materials demonstrate that (1) no genuine issue as to any material fact remains to be litigated, (2) after the evidence is construed most strongly in the nonmoving party's favor, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to judgment as a matter of law. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164.

{¶ 36} In the first and second assignments of error, appellant argues that the trial court did not construe all of the evidence presented most strongly in appellant's favor. As a result, appellant argues that the trial court erred in determining that the record did not establish that appellees acted with malice in pursuing multiple criminal prosecutions and/or that the evidence presented did not create a question of fact.

{¶ 37} We shall first address the cause of action for malicious prosecution. Appellant argues that the record established that appellees maliciously prosecuted him by providing police and prosecutors with false information and perjured testimony. He argues that this false information was used to initiate and pursue criminal charges and caused appellant to be terminated from his employment.

{¶ 38} "Ohio law, like the English common law before it, has long recognized a right to recover in tort for the misuse of civil and criminal actions as a means of causing harm. * * * Our jurisprudence has developed two lines of cases, one involving claims or malicious prosecution founded on criminal proceedings, and

the other involving claims of malicious prosecution founded on civil proceedings." *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 144, 559 N.E.2d 732.

{¶ 39} A private person who initiates or procures the institution of a civil or criminal prosecution against another is not subject to liability unless the person against whom the proceedings were initiated proves all three of the following: (1) malice in instituting or continuing a prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the defendant. *Trussell v. Gen. Motors Corp.*

{¶ 40} Malice, for the purpose of a malicious criminal prosecution claim, has been defined as "an improper purpose, or any purpose other than the legitimate interest in bringing an offender to justice." *Criss v. Springfield Twp.* (1990), 56 Ohio St.3d 82, 564 N.E.2d 440. Malice may be inferred from the absence of probable cause. *Melanowski v. Judy* (1921), 102 Ohio St. 153, 131 N.E. 360.

{¶ 41} Probable cause is defined as " '[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.' " *Dailey v. First Bank of Ohio,* Franklin App. No. 04AP–1309, 2005-Ohio-3152, 2005 WL 1483678, ¶ 15, quoting *Ash v. Marlow* (1851), 20 Ohio 119, paragraph one of the syllabus. "The person instituting the criminal proceeding is not bound to have evidence sufficient to insure a conviction but is required only to have evidence sufficient to justify an *honest belief* of the guilt of the accused." *Dinucci v. Lis,* Cuyahoga App. No. 88751, 2007-Ohio-4056, 2007 WL 2269740, ¶ 14.

{¶ 42} The return of an indictment by the grand jury is prima facie evidence of probable cause. *Deoma v. Shaker Hts.* (1990), 68 Ohio App.3d 72, 77, 587 N.E.2d 425, 428. Once an indictment has been returned by a grand jury, the plaintiff in a malicious-prosecution action has the burden of producing substantial evidence to establish lack of probable cause. In other words, a plaintiff "must produce evidence to the effect that the return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular." *Deoma v. Shaker Hts.,* 68 Ohio App.3d 72, 77, 587 N.E.2d 425; *Epling v. Pacific Intermountain Express Co.* (1977), 55 Ohio App.2d 59, 9 O.O.3d 220, 379 N.E.2d 239; *Lynch v. Medina Police Dept.* (July 28, 1993), Medina App. No. 2179–M, 1993 WL 280451.

{¶ 43} In this case, although it appears that appellant argues that he was maliciously prosecuted in all instances of the criminal cases, he specifically directs this court's attention to the charges of felony sexual battery returned by the Fairfield County Grand Jury and the misdemeanor charge of contributing to the

unruliness of a minor dealing with an October 11, 1996 incident, which was prepared on behalf of the state of Ohio by a prosecutor in the juvenile division of the county prosecutor's office and signed by appellee Donald Eyman.

{¶ 44} Upon review of the record, we do not find that the trial court erred in granting summary judgment on the cause of action for malicious prosecution. The evidence established that Mahala began having emotional troubles when she was between 13 and 15 years of age. At that time, Mahala was a freshman in high school, was enrolled in accelerated classes and was actively involved in numerous activities, including 4–H. At the end of her freshman year, she attempted to commit suicide.

{¶ 45} In her depositions, Mahala stated that in her sophomore year of high school, her life centered around 4–H activities. Mahala noticed appellant because he was in charge of the 4–H program and he was someone she could talk to about the stress in her life. She stated that she trusted appellant more than she trusted her parents.

{¶ 46} Mahala stated that in January 1996, she and appellant went to Columbus together for a Junior Fair Board Convention. During the trip, appellant told Mahala that she needed someone "safe yet dangerous." Appellant also took Mahala to the movies, where he warmed her hands and put his arm around her.

{¶ 47} After the trip to Columbus, Mahala stated that she continued to see appellant on numerous occasions, at different locations including appellant's office, and at her house when her parents weren't home. They also talked frequently on the phone. During the conversations, appellant would read Mahala children's books, and they would talk about depression, suicide, relationships, and sex. She also received numerous romantic greeting cards from appellant.

{¶ 48} Mahala stated that she began to engage in a sexual relationship with appellant. Mahala stated that the sexual conduct would occur at various locations including appellant's office and the property adjacent to her home. According to Mahala, the incidents of sexual intercourse occurred between June 1, 1996, and September 30, 1996.

{¶ 49} Mahala stated that her relationship with appellant had a negative effect on the relationship with her parents. Appellant made her believe that her parents were bad and expected too much out of her. From June 1, 1996, through September 30, 1996, she lied to her parents to be with appellant.

{¶ 50} Mahala stated that in September 1996, her parents attempted to limit her contact with appellant. Ohio State University also issued a directive to appellant to refrain from having contact with troubled youth, including Mahala.

{¶ 51} On October 11, 1996, appellant took Mahala from the county fairgrounds without her parents' permission. Mahala stated that she and appellant were later found in appellant's car in a secluded area near his office. The seats in the car were reclined. The evidence established that although, at the time of the incident, both Mahala and appellant denied any inappropriate contact, the officer who responded to the scene stated that both appellant and Mahala had unzipped pants and that appellant was hugging Mahala and rubbing her stomach. Mahala later stated that appellant had asked her to engage in oral sex.

{¶ 52} Mahala stated that in April 1997, she disclosed to her counselor that she had engaged in sexual conduct with appellant. The evidence established that the counselor advised Mahala's mother to take Mahala to the prosecutor's office. After meeting with the prosecutor, the Eymans were told to report the sexual conduct to law enforcement.

{¶ 53} Eventually, Mahala testified to a grand jury. Mahala stated that she agreed to have sex with appellant because he threatened to tell her mom and guidance counselor about her suicide attempt and because he reminded her that he was in a position of authority and in charge of her 4–H career. Mahala stated that although she was aware that her mother and father did not like appellant, neither had ever asked her to lie to the police regarding the relationship.

{¶ 54} In her depositions, Kathy Eyman stated that in January 1996, Mahala began exhibiting changes in behavior. She stated that in March 1996, the only calls Mahala received at home were from appellant. She stated that Mahala would stay on the phone all night with him. She stated that she did not believe Mahala when she denied having a sexual relationship with appellant. She stated that she believed there was more to the relationship because her daughter began to lie to her about talking to, and being with, appellant. She stated that Mahala began to struggle in school, that she received romantic cards from appellant, and that he read her children's books over the phone. She stated that her concerns increased when Mahala and appellant were found by law-enforcement officers in a car, in a secluded area, with their pants unzipped. She stated that her husband also caught Mahala and appellant together on the road behind their farm and that they made a police report regarding the incident. Kathy Eyman further stated that she presented the prosecutors with the police report from October 11, 1996, and she believed that the only way she could keep Mahala from contacting appellant was with the help of the law. She testified that in January 1997, the prosecutor, Judy Edwards, spoke with Mahala and prepared a contributing-to-unruliness complaint against appellant. The complaint concerned the incident on October 11 and was signed by Kathy's husband, Donald Eyman. She stated that she did not testify to the grand jury and was excluded from the courtroom during Mahala's testimony at the criminal trial.

{¶ 55} Donald Eyman stated that in January 1997, he caught appellant and his daughter together in a truck on Thomas Road near the family farm. He stated that he became concerned about the relationship when the phone calls and cards increased. He stated that he and his wife talked to the prosecutor about getting Mahala under control. He stated that on January 24, 1997, he signed a complaint charging appellant with contributing to the unruliness of a minor child on October 11, 1996. He stated that the juvenile prosecutor, Judy Edwards, drafted the complaint for his signature. He stated that he told the prosecutor that the complaint might not contain an accurate statement of what happened on October 11, 1996, but that the prosecutor told him that "there was a possibility of believing that."

{¶ 56} Prosecutor Gregg Marx stated in his sworn affidavit that he was the prosecutor in Fairfield County when the appellant was indicted. He stated that the appellees made no official or legal decisions to move forward on charges against appellant. He stated that the decision to present the case to the grand jury was not influenced by appellees but was based in part on two sworn statements made by appellant. He stated that he was also influenced by "substantial objective corroborative evidence gathered by the Lancaster Police Department." Finally, Marx stated: "Affiant was convinced that although this was a difficult case, there was substantial evidence to proceed to trial. Mr. Anderson had made incriminating statements, there was substantial circumstantial evidence to support the charges and that Mr. Anderson's statements coupled with the Lancaster Police Department's investigation, was certainly enough to move forward in good faith and confidence with the charges at hand in the case."

{¶ 57} In his deposition, appellant admitted that he met Mahala in 1995. He stated that he would often meet Mahala alone in his office with the door closed. He stated that over the course of the relationship, he talked with Mahala over the phone at least 300 different times. He stated that he sent Mahala cards that were addressed and signed with various endearments. He stated that he read children's books to Mahala over the phone, including Sesame Street Books and Disney books. He stated that in September 1996, Donald and Kathy Eyman attempted to limit his contact with Mahala, and he was advised by Ohio State University to limit his contact with troubled youth, including Mahala. He stated that on October 11, 1996, he took Mahala from the fairgrounds without her parents' permission and parked the car in a grassy area near his extension office. He stated that both he and Mahala had their seats reclined when the police arrived.

{¶ 58} Based upon the evidence presented, we find that the trial court did not err in finding that there was no question of material fact and that reasonable minds could come to but one conclusion, and that conclusion was that appellees

Donald and Kathy Eyman had reasonable grounds to believe that appellant was engaged in criminal conduct with their minor daughter. With regard to the contributing charge, Kathy and Donald Eyman both stated that they became concerned about the relationship between their daughter and appellant because of numerous telephone calls, romantic cards, and strange behaviors exhibited by their daughter. They stated that they initiated contact with the prosecutor and law enforcement after their efforts to limit contact were unsuccessful and appellant was found with their daughter in a secluded area, reportedly with his pants unzipped. They stated that they presented the prosecutor with the police report of the October 11, 1996 incident prior to the filing of the contributing charge. Donald Eyman stated that the prosecutor prepared the complaint for contributing to the unruliness of their daughter based on the incident report from the Lancaster Police Department and the state's belief that the facts supported the charge. Donald Eyman stated that he signed the complaint pursuant to the prosecutor's representations and request.

{¶ 59} We further find that reasonable minds could come to but one conclusion, that the grand jury proceedings were not irregular and/or influenced by perjured testimony, and therefore there was prima facie evidence of probable cause for the indicted charges. Prosecutor Greg Marx stated that he made the decision to present the case against appellant to the grand jury after objectively reviewing the available evidence. He further stated that appellees did not influence his decision. He also stated that his decision was based in part on what he believed were incriminating statements made by appellant and independent, corroborating evidence collected by the Lancaster Police Department. Furthermore, although there may be some inconsistencies in Mahala's accounts of what happened with appellant, there is nothing in the record to substantiate that Mahala's grand-jury testimony was perjured. Mahala testified that her parents had never asked her to lie or had influenced her statements regarding sexual conduct with appellant.

{¶ 60} For these reasons, we find that the trial court did not err in denying appellant's motion for summary judgment and in granting appellees' motion for summary judgment as it pertained to appellant's claim for malicious prosecution.

{¶ 61} We shall next address the trial court's grant of summary judgment as to appellant's claim of intentional infliction of emotional distress.

{¶ 62} In *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666, the Ohio Supreme Court held that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress." Id. at paragraph one of the syllabus. With respect to the requirement that the alleged conduct be extreme and outrageous, the court explained:

{¶ 63} "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 374–375, 6 OBR 421, 453 N.E.2d 666.

{¶ 64} In the instant case, appellant claims that he suffered severe emotional distress as a result of appellees' initiation and pursuit of criminal charges. However, appellant did not present any evidence that he suffered severe emotional distress. It also appears that appellant's loss of employment, i.e., financial damage, was caused by his actions on October 11, 1996, when he took Mahala to the university parking lot and violated a university directive.

{¶ 65} Furthermore, as previously stated, there is no evidence to suggest that Mahala fabricated the allegations or that Donald and Kathy Eyman were malicious in their efforts to protect their daughter. We agree with the trial court that appellees' actions in seeking to protect their daughter from appellant's suspicious conduct did not exceed the bounds of decency and could not be considered utterly intolerable in a civilized society. Thus, appellant failed to prove and/or to raise a genuine issue of material fact regarding whether appellees intentionally inflicted serious emotional harm. For these reasons, we find that the trial court did not err in denying appellant's motion for summary judgment and in granting summary judgment in favor of appellees on the claim of intentional infliction of emotional distress.

{¶ 66} Based upon a review of the record, we hereby find that appellant's first and second assignments of error lack merit.

{¶ 67} Accordingly, appellant's first and second assignments of error are hereby overruled.

{¶ 68} The judgment of the Fairfield County Court of Common Pleas is hereby affirmed.

Judgment affirmed.

FARMER, P.J., and WISE, J., concur.