[Cite as *In re C.B.*, 2019-Ohio-5023.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN RE: C.B., | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| A MINOR CHILD, | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, J. |
| | : | |
| | : | |
| | : | Case No. 2019-COA-009 |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Ashland County
Court of Common Pleas, Juvenile
Court Division, Case No. 20142293

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        December 5, 2019

APPEARANCES:

For Plaintiff-Appellee

CHRISTOPHER R. TUNNELL
Ashland County
Prosecuting Attorney

By: COLE F. OBERLI
Assistant Prosecuting Attorney
110 Cottage Street
Ashland, Ohio 44805

For Defendant-Appellant

ABIGAIL CHRISTOPHER
Assistant State Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio 43215

*Baldwin, J.*

**{¶1}**   C.B. appeals the Ashland County Common Pleas Court, Juvenile Division's decision to classify him as a Tier II Sex Offender.  Appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

**{¶2}**   This matter was before this court in *In re C.B.*, 5th Dist. Ashland No. 15-COA-027, 2016-Ohio-4779, and while we remanded the case for redetermination of Appellant's Juvenile Offender Registration status, the facts remain unchanged, so we restate the facts and the case as described within that case.

**{¶3}**   On October 23, 2014, E.O., a nine year-old student in Ashland City Schools, met with Officer Kim Mager of the Ashland Police Department. Kris Manley, a Principal in the Ashland City School District, called the Ashland Police Department to report E.O. alleged she had been the victim of repeated sexual assaults by two neighbors, C.B., and his brother, M.B.

### E.O. Interview with Detective Mager

**{¶4}**   Detective Mager first interviewed E.O. on October 23, 2014, when she was in the fourth grade. E.O. understood the purpose of the interview was to discuss her neighbors, C.B. and M.B.

**{¶5}**   E.O. informed Officer Mager M.B., her fifteen year old neighbor, touched her vaginal area, which she referred to as her "bottom." E.O. told Officer Mager M.B. and his brother, C.B., touched her vaginal area behind the shed at the rear of M.B.'s residence. E.O. related both M.B. and C.B. inserted their fingers inside her vagina on numerous occasions. E.O. said M.B. digitally penetrated her "five to ten times ... I'm not

sure, but he does it a lot." She said the incidents with M.B. almost always ended with his fingers inside her vagina. She said the incidents always occurred behind the shed.

{¶6}   E.O. estimated the incidents began in first grade, about three years prior, putting her at age six. She averred M.B. and C.B. both touched her vagina on the outside of her clothes and put their hands up her shirt.

{¶7}   E.O. described an incident during which S.B., M.B. and C.B.'s mother, witnessed M.B. touching her. She stated the incident occurred "right before school started," she believes in late August, 2014, when she was playing in the backyard. E.O. said M.B. told her to "come here," and while they were trying to "spy" on someone, M.B. was "touching me with his fingers inside me." C.B. was "watching to make sure nobody saw it." E.O. stated at the same time, S.B. appeared behind the shed and saw her with her pants and panties down and M.B. sitting in front of her. M.B. had his fingers inside her. E.O. stated S.B. saw M.B. with his fingers inside her because "I was right there where she looked and I saw her looking at me." S.B. yelled at M.B., stating, "That's it! You're grounded and you can't play with her anymore!

{¶8}   E.O. also described incidents during which M.B. and C.B. attempted to take videos of her with their cell phones while touching her vaginal area.

{¶9}   Detective Mager wrote a narrative summarizing her interview with E.O.

### C.B. Interview with Lieutenant Icenhour

### Initial Interview

{¶10} On October 23, 2014, Lieutenant Joel Icenhour of the Ashland Police Department met with C.B., a sixteen year-old student at Ashland High School. Assistant Principal Jon Walter removed C.B. from class and escorted him to his office, where

Lieutenant Icenhour was waiting. Principal Walter sat behind the desk, while C.B. and Lieutenant Icenhour sat in two chairs in front of Principal Walter. C.B. was told Lieutenant Icenhour was there to talk to him, he was not under arrest, he didn't have to talk to him if he didn't want to, and he was free to leave. Principal Walter did not engage in the interview, but remained present according to school board policy. C.B. orally consented to the interview with Lieutenant Icenhour.

{¶11} Lieutenant Icenhour informed C.B. he was at the school to discuss allegations made by E.O. concerning inappropriate sexual contact with C.B. and M.B. C.B. denied ever touching E.O., but admitted E.O. would come close to him and "rub up against him." He stated M.B. played often with E.O.

{¶12} C.B. became emotionally upset during the interview, again reiterating E.O. would sometimes get close to him and "rub up against him." He stated he didn't like it and would just walk away. He stated she would often walk around showing her underwear. He repeatedly stated he would never commit this type of offense because he feared the consequences. He said he would never commit a sex offense as it would impede his future plans, including going to the military and a career in law enforcement. He also feared juvenile detention.

{¶13} As the interview concluded, Lieutenant Icenhour told C.B. to take some time alone before returning to class. Lieutenant Icenhour informed C.B. he intended to interview his brother, M.B., and may need to speak with him again.

**M.B. Interview with Lieutenant Icenhour**

{¶14} Lieutenant Icenhour then interviewed M.B. M.B. stated his date of birth was September 28, 1999. Lieutenant Icenhour told M.B. he had come to the high school to

discuss statements made by E.O. M.B. indicated he knew E.O., she was his neighbor, and he knew her age. He stated they were friends, and often played together, until he was told he should not be playing with her because he was "in high school."

{¶15} M.B. initially denied sexual conduct with E.O., but eventually admitted to touching E.O.'s vaginal area behind the shed. M.B. said C.B. acted as the look-out playing basketball in front of the shed, while he engaged in the touching. He denied C.B. ever witnessed him touching E.O.

{¶16} When asked about C.B.'s role in the conduct, M.B. initially indicated he knew nothing about any of the incidents, but then described his role as the "undergoer" or "side operation." He stated E.O. told him C.B. touched her, but he did not talk to C.B. about the incidents.

{¶17} M.B. guessed C.B. engaged in touching E.O. "five or six times" based on the accounts E.O. related to him.

### C.B. Second Interview with Lieutenant Icenhour

{¶18} Following his interview with M.B., Lieutenant Icenhour then called C.B. back to the interview room. He informed C.B. he had talked to M.B. and M.B. had indicated C.B. had a role in M.B.'s conduct with E.O., and M.B. had indicated C.B. had himself engaged in touching E.O. C.B. again denied the touching.

{¶19} Lieutenant Icenhour engaged C.B. in further conversation, explaining the situation to C.B. and his experience as a law enforcement investigator. C.B. then admitted to touching E.O. during a walk at the Church of God. C.B. claimed E.O. "rubbed up against him." He then admitted he stuck his finger inside her vagina and put his hands down her pants. C.B. claimed to have stopped because it "felt weird" and "people can go to jail for

that." C.B. initially stated he was fifteen years-old at the time the incident occurred. He later stated, the sexual conduct had not occurred for three years, and he believed he was thirteen years of age at the time.

**{¶20}** C.B. maintained the sexual conduct was not a continuing course of conduct, and had not happened again for three years. He denied the occurrence of a second incident.

**{¶21}** After Lieutenant Icenhour discussed the situation with C.B., C.B. was eventually sent to a period of "chill out time" and then back to class.

**{¶22}** C.B. was charged by complaint filed in the Ashland County Court of Common Pleas, Juvenile Division, on October 30, 2014. The complaint alleged C.B. delinquent of one count of Rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, if committed by an adult.

**{¶23}** On December 26, 2014, C.B. filed a Motion to Suppress all the statements made to Lieutenant Icenhour on October 23, 2014 at Ashland High School. The State filed a memorandum in opposition to the motion to suppress on January 8, 2015.

**{¶24}** The trial court conducted a hearing on the motion to suppress on January 14, 2015. C.B. did not testify at the suppression hearing. Via Opinion and Judgment Entry of January 27, 2015, the trial court overruled C.B.'s motion to suppress.

**{¶25}** The State filed an Amended Complaint on February 19, 2015. The Amended Complaint alleged C.B. to be delinquent of:  Count 1. Rape, in violation of R.C. 2907.02(A)(1)(b);  Count 2. Rape, in violation of R.C. 2907.02(A)(1)(b); Count 3. Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4); Count 4. Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4).

**{¶26}** The Amended Complaint alleged the offenses occurred between March 11, 2011, and October 21, 2014.

**{¶27}** On May 29, 2015, the State filed an Evidence Rule 807 Notice pertaining to statements made by E.O. at Ashland City Schools to Detective Kimberly Mager. The Notice stated, in the event E.O. could not, refused or claimed lack of memory about events charged, the State intended to introduce the testimony of Detective Mager in regards to the victim's statements about the events.

## Adjudication

**{¶28}** The matter proceeded to an Adjudication Hearing on June 9, 2015. At the adjudication hearing, E.O. testified C.B. walked her home from the Church of God, which was three houses down from her home. She testified it was during summer, but she could not recall what year it occurred. She recalled the two sat down on the ground and he touched her "bottom," which she explained meant her vaginal area. She said his hands went underneath her clothes, touching her skin, and his fingers went inside her vagina. She indicated it felt "bruised" when his fingers were inside. She claimed he put his phone close to her pants when he did it.

**{¶29}** When asked if C.B. had touched her another time, E.O. said he had touched her at Toppers, a haircut place close to her house. She also could not remember when this had occurred. She claimed the incident was just like the incident at Church of God when C.B. put his finger inside her vagina. She indicated the feeling of bruising as feeling the same.

**{¶30}** Lieutenant Joel Icenhour of the Ashland Police Department testified at the adjudication hearing as to his interview with C.B. at Ashland High School:

Q. Can you describe for the Court [C.B.'s] statements to you about the incident that you were investigating?

A. Well, he was very evasive to begin with, and as the interview went on, he eventually admitted, at one time we were talking about [E.O.] and he admitted to touching her privates one time, putting his hand down her pants and inserting the tip of his finger into her vaginal cavity, and he gave a variance of ages of when it occurred.

At one point he said around age 15, earlier in a[sic] interview he said 14 to 15, and then he said throughout age 13, previous to that, which to me indicated that was probably more than a one time incident and——

\*\*\*

A. From there, he described it as the incident, the one that he admitted to of walking [E.O.] around the building, the Church of God, and [E.O.] kept brushing up against him and rubbing into him, he mentioned at one point it was at a spot at the Church of God that nobody could see, and I talked about the consistency of this going on, and he got upset at that point and he said none of this inconsistent [sic] crap, and he said it was one time.

And I said, was it one time that you put your had down her pants and inserted your finger into her vagina, and he said, yes, that was just one time, and reiterated, and there was nothing with that consistency like it was an on going situation.

Adjudication Hearing, Tr. at 104–105.

{¶31} Lieutenant Icenhour continued in his testimony:

BY MS. BATES:

Q As far as the time period that you talked to C.B. about, you said that he stated that he was about 14 or 15, does that sound right?

A Yeah, he gave different statements about a couple years ago, and he mentioned age 13, and then mentioned age 14 to 15 and then 15, so. Adjudication Hearing, Tr. at 111–112.

**{¶32}** Detective Kimberly Mager testified as to her interview with E.O. She testified as to E.O.'s allegations, but did not provide information as to the incidents at Church of God or at Toppers. She did not provide dates or a time frame as to when the events occurred.

**{¶33}** C.B. testified on his own behalf at the adjudication hearing. At the hearing, C.B. denied touching E.O. sexually. When asked why he had told Lieutenant Icenhour he had touched E.O. once, C.B. testified he felt like he was being broken down and was tired of being drilled. He also stated he thought admission to the behavior would get him out of the office.

### Adjudication of Delinquency and Classification

**{¶34}** Via Judgment Entry of June 12, 2015, the trial court adjudicated C.B. delinquent of two counts of rape and two counts of gross sexual imposition.

**{¶35}** The trial court conducted a dispositional hearing on July 16, 2015, and via Judgment Entry of the same date the trial court entered disposition. The trial court merged the two counts of gross sexual imposition finding the offenses allied offenses of similar import with the two counts of rape as the offenses did not have a separate animus;

therefore, the trial court did not enter a separate dispositional order with regard to the two counts of gross sexual imposition.

**{¶36}** As to the first count of rape, the trial court committed C.B. to the Ohio Department of Youth Services ("ODYS") for institutionalization in a secure facility for an indefinite term consisting of a minimum period of two years and a maximum period not to exceed his attainment of the age of twenty-one years.

**{¶37}** As to the second offense of rape, the trial court committed C.B. to ODYS for institutionalization in a secure facility for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed his attainment of the age of twenty one years.

**{¶38}** The trial court ordered the sentences on Counts One and Two to run consecutively.

**{¶39}** Via Judgment Entry of July 28, 2015, the trial court classified C.B. a Tier III Juvenile Offender Registrant. The trial court's entry states:

2) The Court finds that the offenses of Rape, in violation of Section 2907.02(A)(1)(b) of the Ohio Revised Code, are Tier III sexually oriented offenses as defined by statute. The Court further recognizes and finds, however that under present Ohio law while classification may be mandatory the Tier upon which the juvenile is placed is discretionary with the Court and the Court has the discretion to classify the juvenile pursuant to whatever Tier the Court determines to be appropriate in this case. The Court finds no basis in the evidence or any of the material received by the Court to classify the juvenile at the present time in any Tier other than as noted above.

3) The Court does hereby classify [C.B.] a Tier III Sex Offender. (Emphasis added.)

**{¶40}** The Appellant filed an appeal and submitted five assignments of error. We overruled four of the assignments of error and with regard to the Appellant's Third Assignment of Error which claimed "THE JUVENILE COURT ERRED WHEN IT CLASSIFIED C.B. AS A JUVENILE SEX OFFENDER REGISTRANT BECAUSE THE RECORD DID NOT ESTABLISH THAT HE WAS ELIGIBLE FOR REGISTRATION. FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION; OHIO CONSTITUTION, ARTICLE 1, SECTION 16" we held that:

> However, the trial court's Judgment Entry states "The Court further recognizes and finds, however, that under Ohio law while classification may be mandatory, the Tier upon which the juvenile is placed is discretionary with the Court and the Court ..." The trial court seemed to look to the offense of Rape as a Tier III offense. At the adjudication hearing herein, C.B. testified at one point he was 15 years old at the time of the offense, and at another point he states he was 14 or 15, and another time he states he was 13. Therefore, the trial court had discretion as to whether to classify C.B. a JOR subject to registration and the trial court erred in finding classification mandatory. See, *In Re: D.S.,* 5th Dist. 13 CA 58, 2014 Ohio 867.

*In re C.B.*, 5th Dist. Ashland No. 15-COA-027, 2016-Ohio-4779, ¶ 89, fn. omitted.

**{¶41}** We remanded the case for "redetermination of Appellant's JOR status. *Id.* at ¶ 105.

**{¶42}** The trial court conducted a hearing pursuant to R.C. 2152.83 to redetermine Appellant's Juvenile Offender Registration Status as directed by this court. Appellant contended that the evidence presented at the adjudication was insufficient to establish his age and thus his eligibility for registration and suggested a continuance to allow Appellee to obtain and present evidence regarding that issue. The Appellee declined the offer, contending the age of Appellant was resolved at the adjudicatory stage and that no additional evidence was necessary

**{¶43}** The Appellant presented the testimony of Dee Pendlebury, Appellant's parole officer. She informed the court that Appellant remained in DYS custody because he had refused to participate in court-ordered sex offender treatment. (Sex Offender Classification Hearing Transcript, p. 24), but otherwise noted that Appellant behaved very well. Appellant scored as a low risk to reoffend on the Ohio Youth Offender System Risk Assessment Tool (OYAS) without completing sex offender treatment. Appellant has strong family support, does not use drugs or alcohol, and did not exhibit negative behaviors while in DYS. Further, C.B. graduated high school and completed classes through the Ashland College program while in DYS custody.

**{¶44}** The Trial Court noted, in the preamble of its entry that all parties were present at the hearing and had the opportunity to present evidence and argument. Exhibits were offered at the hearing and the trial court notified the parties that it would "take judicial notice of all prior proceedings in this case and the entire file, which includes all evidence presented at several hearings conducted in this case, as well as reports prepared and filed with the court."(Opinion and Judgment Entry, March 6, 2019, Docket # 20, p. 1). Within that entry, the trial court summarizes the history of the case and notes

prior to the aforementioned appeal, it had found that appellant "was subject to a classification hearing and subject to classification pursuant to Section 2152.83 of the Ohio Revised Code."

**{¶45}** The trial court reviewed Appellant's behavior while confined at the Ohio Department of Youth Services and found that Appellant:

has been an exemplary resident at any facility in which he was placed. He has completed all other programs in which he was placed. He has completed school; he enrolled in the college program at the Ohio Department of Youth Services; and has completed nearly two years of college work. He has not violated rules and regulations at the facility. He has, to the contrary, followed all rules; he has worked regularly, including outside the facility; he has completed risk assessments, including the OYAS; and has always scored as a low risk to recidivate. In short, he has successfully completed all things asked of him except completing the sex offender program.

(Opinion and Judgment Entry, March 6, 2019, Docket # 20, p. 4).

**{¶46}** The sex offender program was a court ordered program that Appellant refused to complete, as he continued to maintain his innocence. This refusal concerned the trial court, which noted that Appellant "is not taking responsibility for his actions and has not indicated any understanding of the wrongfulness of his actions. He has also expressed no remorse for his conduct, again maintaining that he had done nothing wrong and that he had not committed any of the acts with which he was charged and upon which he was adjudicated." (Opinion and Judgment Entry, March 6, 2019, p. 4).

**{¶47}** The trial court then reviewed the factors set forth in R.C. 2152.83(D) and/or (E), acknowledged that it has considered the factors of R.C. 2950.11(K) and R.C. 2929.12(B) and (C) and the results of any treatment provided or any follow up professional assessments. The trial court noted again the Appellant's refusal to participate in a sex offender program.

**{¶48}** The trial court then described its discretionary authority and concluded that Appellant is eligible to be classified and found that it was appropriate to classify him a Tier II sex offender, one tier lower than his classification prior to the initial appeal.

**{¶49}** Appellant filed a timely notice of appeal and submitted two assignments of error:

**{¶50}** "I. THE JUVENILE COURT VIOLATED C.B.'S RIGHT TO DUE PROCESS BECAUSE THE STATE FAILED TO ESTABLISH THAT C.B. WAS AT LEAST 14 YEARS OLD AT THE COMMISSION OF THE OFFENSE; THEREFORE, C.B. WAS NOT AGE ELIGIBLE FOR CLASSIFICATION, IN VIOLATION OF FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; ARTICLE I, SECTION 16, OHIO CONSTITUTION; AND R.C. 2152.83."

**{¶51}** "II. THE COURT ABUSED ITS DISCRETION WHEN IT CLASSIFIED C.B. AS A TIER II SEX OFFENDER INSTEAD OF A TIER I SEX OFFENDER UNDER R.C. 2152.83.

### STANDARD OF REVIEW

**{¶52}** Appellant's first assignment of error attacks the sufficiency of the evidence, so our review for that issue is provided by *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). When reviewing the sufficiency of the evidence, an appellate court does not

ask whether the evidence should be believed. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus. *State v. Poutney,* 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19.

**{¶53}** We review the trial court's decision regarding the second assignment of error for abuse of discretion. We must examine the entire record and determine whether there is sufficient competent and credible evidence to support the judgment rendered by the trial court. *Seasons Coal Company v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1978). *Trickey v. Trickey,* 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). The trial court must resolve disputed issues of fact and weigh the testimony and credibility of the witnesses. *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23, 550 N.E.2d 178 (1990). We defer to the trial court's discretion because the trial court had the opportunity to observe the witnesses and parties in weighing the credibility of the proffered testimony in a way a reviewing court cannot.

**{¶54}** The Supreme Court has defined the term abuse of discretion as demonstrating the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). Further, if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the juvenile court's verdict and judgment. *In the Matter of: M.D. & A.D. (D.D., Defendant-Appellant),* 10th Dist. Franklin Nos. 2019-Ohio-3674, ¶¶ 32-33.

**{¶55}** We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' " *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, quoting *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997).

### ANALYSIS

**{¶56}** In his first assignment of error, Appellant contends the evidence before the Court does not support a conclusion that he was at least fourteen years of age at the time any of the offenses were committed. This argument attacks the sufficiency of the evidence, but we find that this matter has been previously presented to the trial court, decided and subject to appeal and thus further consideration is barred by the doctrine of issue preclusion.

**{¶57}** The doctrine of collateral estoppel or issue preclusion "holds that a fact or a point that was actually and directly at issue in a previous action, and was *** passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different." *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998); see also *Norwood v. McDonald*, 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67(1943), paragraph three of the syllabus. Essentially, collateral estoppel prevents parties from relitigating facts and issues that were fully litigated in a previous case. *State ex rel. Shemo v. Mayfield Hts.*, 95 Ohio St.3d 59, 64, 765 N.E.2d 345 (2002). However, in order for the doctrine to apply, the issues must have been determined by a final, appealable order. *State v.*

*Williams*, 76 Ohio St.3d 290, 294, 667 N.E.2d 932 (1996). *Anderson v. Eyman,* 180 Ohio App.3d 794, 2009-Ohio-102, 907 N.E.2d 730, ¶ 28 (5th Dist).

**{¶58}** In the case sub judice, the trial court initially classified Appellant as a Tier III Juvenile Offender Registrant after concluding that the Appellant was at least fifteen years of age at the time of the commission of the offenses.    (Opinion and Judgment Entry, July 28, 2015, Docket # 9, p. 4).  Appellant appealed the decision asserting as part of his third assignment of error that "the trial court erred in classifying him a Juvenile Offender Registrant/Tier III Sex Offender as the record does not establish he is age eligible for registration." *In re C.B.,* 5th Dist. Ashland No. 15-COA-027, 2016-Ohio-4779, ¶ 82. In that case we noted that "The trial court found C.B. was either fifteen or sixteen years of age at the time of the commission of the offenses." *Id.* While we remanded the case to the trial court because we held that the trial court misunderstood the breadth of its discretion to classify Appellant as a juvenile offender registrant, we affirmed the trial court's factual finding that Appellant was fifteen or sixteen when the offenses were committed when we held that " [t]herefore, the trial court had discretion as to whether to classify C.B. a JOR subject to registration and the trial court erred in finding classification mandatory." *In re C.B.*, 5th Dist. Ashland No. 15-COA-027, 2016-Ohio-4779, ¶ 89.  If the record had contained insufficient evidence to establish the Appellant was age eligible, we would have concluded that the trial court had no discretion to classify Appellant eligible for classification.

**{¶59}** Appellant's first assignment of error includes the same age eligibility issue raised in the third assignment of error in his prior appeal.  The parties are identical, no new facts have been introduced and there has been no intervening change in the law.

The trial court issued a final appealable order regarding this issue, the appellant asserted in his appeal that the record did not support a finding that he was age eligible for classification under R.C. 2152.83 and this court rejected his appeal. These facts lead to the inexorable conclusion that this assignment is barred by the doctrine of collateral estoppel.

{¶60} Because Appellant had a full and fair opportunity to litigate the issue of his age in the prior appeal and the hearings preceding that appeal, and because a final appealable order was issued and affirmed, we hold that the first assignment of error is barred by the doctrine of issue preclusion.

{¶61} Appellant's second assignment of error purports to assert that the trial court abused its discretion by classifying him as a Tier II Juvenile Offender Registrant, but the argument offered in support focuses upon the rational for R.C. 2152.83 and fails to address how the trial court abused its discretion in the context of the statute.

{¶62} Much of Appellant's argument is directed toward "the psychological damage and social stigmas that exist when a child is placed on the sex offender registration" and makes reference to a study that is not part of the record in the underlying case. His argument focuses upon the rational and impact of the statute and is a legislative and not a judicial matter. The trial court and this court are bound to apply the law as drafted within constitutional boundaries, so we are unable to consider much of Appellant's argument. To the extent that we can consider his assertions regarding the trial court's exercise of discretion, we find appellant's argument unsupported by the record.

{¶63} The trial court provided a detailed recitation of the facts, documents and law considered, and did not overlook Appellant's positive attributes, but included those in its

analysis. The trial court made express reference to all the elements that were considered in its analysis and expressed concern that Appellant steadfastly refused to comply with its order to complete a sex offender class, holding stubbornly to his declaration of innocence. Appellant's release from confinement was delayed as a result of his behavior and this fact was considered by the Court when it classified him as a Tier II offender and not a Tier III offender, which was the initial classification.

{¶64} We have reviewed the record and we cannot find support for a conclusion that the trial court's decision was arbitrary, unreasonable or unconscionable. The trial court completed a careful analysis of the facts in the record and the applicable law and we will not substitute our judgment for that of the trial judge. *Berk v. Matthews*, 53 Ohio St.3d 161, 559 N.E.2d 1301, 1308 (1990).

{¶65} The Appellant's second assignment of error is overruled.

{¶66} The decision of the Ashland County Court of Common Pleas, Juvenile Division is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, Earle, J. concur.