[Cite as *In re C.B.*, 2016-Ohio-4779.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: C.B., A MINOR CHILD

JUDGES:
Hon. William B. Hoffman, P.J.
Hon. Patricia A. Delaney, J.
Hon. Craig R. Baldwin, J.

Case No. 15-COA-027

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Ashland County Court of Common Pleas, Juvenile Division |
| JUDGMENT: | Affirmed in part; Reversed in part and Remanded |
| DATE OF JUDGMENT ENTRY: | June 30, 2016 |
| APPEARANCES: | |

For Plaintiff-Appellee

For Defendant-Appellant

CHRISTOPHER R. TUNNELL
Ashland County Prosecutor
110 Cottage Street, Third Floor
Ashland, Ohio 44805

BROOK M. BURNS
Assistant State Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio 43215

EMILY M. BATES
Assistant Prosecuting Attorney
110 Cottage Street, Third Floor
Ashland, Ohio 44805

*Hoffman, P.J.*

**{¶1}** C.B., a delinquent child, appeals his adjudication and disposition entered by the Ashland County Court of Common Pleas, Juvenile Division.  Plaintiff-appellee is the state of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶2}** On October 23, 2014, E.O., a nine year-old student in Ashland City Schools, met with Officer Kim Mager of the Ashland Police Department.  Kris Manley, a Principal in the Ashland City School District, called the Ashland Police Department to report E.O. alleged she had been the victim of repeated sexual assaults by two neighbors, C.B., and his brother, M.B.

*E.O. Interview with Detective Mager*

**{¶3}** Detective Mager first interviewed E.O. on October 23, 2014, when she was in the fourth grade. E.O. understood the purpose of the interview was to discuss her neighbors, C.B. and M.B.

**{¶4}** E.O. informed Officer Mager M.B., her fifteen year old neighbor, touched her vaginal area, which she referred to as her "bottom." E.O. told Officer Mager M.B. and his brother, C.B., touched her vaginal area behind the shed at the rear of M.B.'s residence. E.O. related both M.B. and C.B. inserted their fingers inside her vagina on numerous occasions. E.O. said M.B. digitally penetrated her "five to ten times…I'm not sure, but he does it a lot." She said the incidents with M.B. almost always ended with his fingers inside her vagina. She said the incidents always occurred behind the shed.

**{¶5}** E.O. estimated the incidents began in first grade, about three years prior, putting her at age six. She averred M.B. and C.B. both touched her vagina on the outside of her clothes and put their hands up her shirt.

**{¶6}** E.O. described an incident during which S.B., M.B. and C.B.'s mother, witnessed M.B. touching her. She stated the incident occurred "right before school started," she believes in late August, 2014, when she was playing in the backyard. E.O. said M.B. told her to "come here," and while they were trying to "spy" on someone, M.B. was "touching me with his fingers inside me." C.B. was "watching to make sure nobody saw it." E.O. stated at the same time, S.B. appeared behind the shed and saw her with her pants and panties down and M.B. sitting in front of her. M.B. had his fingers inside her. E.O. stated S.B. saw M.B. with his fingers inside her because "I was right there where she looked and I saw her looking at me." S.B. yelled at M.B., stating, "That's it! You're grounded and you can't play with her anymore!"

**{¶7}** E.O. also described incidents during which M.B. and C.B. attempted to take videos of her with their cell phones while touching her vaginal area.

**{¶8}** Detective Mager wrote a narrative summarizing her interview with E.O.

*C.B. Interview with Lieutenant Icenhour*

*Initial Interview*

**{¶9}** On October 23, 2014, Lieutenant Joel Icenhour of the Ashland Police Department met with C.B., a sixteen year-old student at Ashland High School. Assistant Principal Jon Walter removed C.B. from class and escorted him to his office, where Lieutenant Icenhour was waiting. Principal Walter sat behind the desk, while C.B. and Lieutenant Icenhour sat in two chairs in front of Principal Walter. C.B. was told Lieutenant

Icenhour was there to talk to him, he was not under arrest, he didn't have to talk to him if he didn't want to, and he was free to leave. Principal Walter did not engage in the interview, but remained present according to school board policy. C.B. orally consented to the interview with Lieutenant Icenhour.

**{¶10}** Lieutenant Icenhour informed C.B. he was at the school to discuss allegations made by E.O. concerning inappropriate sexual contact with C.B. and M.B. C.B. denied ever touching E.O., but admitted E.O. would come close to him and "rub up against him." He stated M.B. played often with E.O.

**{¶11}** C.B. became emotionally upset during the interview, again reiterating E.O. would sometimes get close to him and "rub up against him." He stated he didn't like it and would just walk away. He stated she would often walk around showing her underwear. He repeatedly stated he would never commit this type of offense because he feared the consequences. He said he would never commit a sex offense as it would impede his future plans, including going to the military and a career in law enforcement. He also feared juvenile detention.

**{¶12}** As the interview concluded, Lieutenant Icenhour told C.B. to take some time alone before returning to class. Lieutenant Icenhour informed C.B. he intended to interview his brother, M.B., and may need to speak with him again.

*M.B. Interview with Lieutenant Icenhour*

**{¶13}** Lieutenant Icenhour then interviewed M.B. M.B. stated his date of birth was September 28, 1999. Lieutenant Icenhour told M.B. he had come to the high school to discuss statements made by E.O. M.B. indicated he knew E.O., she was his neighbor,

and he knew her age. He stated they were friends, and often played together, until he was told he should not be playing with her because he was "in high school."

{¶14} M.B. initially denied sexual conduct with E.O., but eventually admitted to touching E.O.'s vaginal area behind the shed. M.B. said C.B. acted as the look-out playing basketball in front of the shed, while he engaged in the touching. He denied C.B. ever witnessed him touching E.O.

{¶15} When asked about C.B.'s role in the conduct, M.B. initially indicated he knew nothing about any of the incidents, but then described his role as the "undergoer" or "side operation." He stated E.O. told him C.B. touched her, but he did not talk to C.B. about the incidents.

{¶16} M.B. guessed C.B. engaged in touching E.O. "five or six times" based on the accounts E.O. related to him.

*C.B. Second Interview with Lieutenant Icenhour*

{¶17} Following his interview with M.B., Lieutenant Icenhour then called C.B. back to the interview room. He informed C.B. he had talked to M.B. and M.B. had indicated C.B. had a role in M.B.'s conduct with E.O., and M.B. had indicated C.B. had himself engaged in touching E.O. C.B. again denied the touching.

{¶18} Lieutenant Icenhour engaged C.B. in further conversation, explaining the situation to C.B. and his experience as a law enforcement investigator. C.B. then admitted to touching E.O. during a walk at the Church of God. C.B. claimed E.O. "rubbed up against him." He then admitted he stuck his finger inside her vagina and put his hands down her pants. C.B. claimed to have stopped because it "felt weird" and "people can go to jail for that." C.B. initially stated he was fifteen years-old at the time the incident occurred. He

later stated, the sexual conduct had not occurred for three years, and he believed he was thirteen years of age at the time.

{¶19} C.B. maintained the sexual conduct was not a continuing course of conduct, and had not happened again for three years. He denied the occurrence of a second incident.

{¶20} After Lieutenant Icenhour discussed the situation with C.B., C.B. was eventually sent to a period of "chill out time" and then back to class.

*Proceedings*

{¶21} C.B. was charged by complaint filed in the Ashland County Court of Common Pleas, Juvenile Division, on October 30, 2014. The complaint alleged C.B. delinquent of one count of Rape, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, if committed by an adult.

{¶22} On December 26, 2014, C.B. filed a Motion to Suppress all the statements made to Lieutenant Icenhour on October 23, 2014 at Ashland High School. The State filed a memorandum in opposition to the motion to suppress on January 8, 2015.

{¶23} The trial court conducted a hearing on the motion to suppress on January 14, 2015. C.B. did not testify at the suppression hearing. Via Opinion and Judgment Entry of January 27, 2015, the trial court overruled C.B.'s motion to suppress.

{¶24} The State filed an Amended Complaint on February 19, 2015. The Amended Complaint alleged C.B. to be delinquent of,

{¶25} Count 1. Rape, in violation of R.C. 2907.02(A)(1)(b);

{¶26} Count 2. Rape, in violation of R.C. 2907.02(A)(1)(b);

{¶27} Count 3. Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4);

**{¶28}** Count 4. Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4).

**{¶29}** The Amended Complaint alleged the offenses occurred between March 11, 2011, and October 21, 2014.

**{¶30}** On May 29, 2015, the State filed an Evidence Rule 807 Notice pertaining to statements made by E.O. at Ashland City Schools to Detective Kimberly Mager. The Notice stated, in the event E.O. could not, refused or claimed lack of memory about events charged, the State intended to introduce the testimony of Detective Mager in regards to the victim's statements about the events.

*Adjudication*

**{¶31}** The matter proceeded to an Adjudication Hearing on June 9, 2015. At the adjudication hearing, E.O. testified C.B. walked her home from the Church of God, which was three houses down from her home. She testified it was during summer, but she could not recall what year it occurred. She recalled the two sat down on the ground and he touched her "bottom," which she explained meant her vaginal area. She said his hands went underneath her clothes, touching her skin, and his fingers went inside her vagina. She indicated it felt "bruised" when his fingers were inside. She claimed he put his phone close to her pants when he did it.

**{¶32}** When asked if C.B. had touched her another time, E.O. said he had touched her at Toppers, a haircut place close to her house. She also could not remember when this had occurred. She claimed the incident was just like the incident at Church of God when C.B. put his finger inside her vagina. She indicated the feeling of bruising as feeling the same.

**{¶33}** Lieutenant Joel Icenhour of the Ashland Police Department testified at the adjudication hearing as to his interview with C.B. at Ashland High School,

Q. Can you describe for the Court [C.B.'s] statements to you about the incident that you were investigating?

A. Well, he was very evasive to begin with, and as the interview went on, he eventually admitted, at one time we were talking about [E.O.] and he admitted to touching her privates one time, putting his hand down her pants and inserting the tip of his finger into her vaginal cavity, and he gave a variance of ages of when it occurred.

At one point he said around age 15, earlier in a [sic] interview he said 14 to 15, and then he said throughout age 13, previous to that, which to me indicated that was probably more than a one time incident and---

***

A. From there, he described it as the incident, the one that he admitted to of walking [E.O.] around the building, the Church of God, and [E.O.] kept brushing up against him and rubbing into him, he mentioned at one point it was at a spot at the Church of God that nobody could see, and I talked about the consistency of this going on, and he got upset at that point and he said none of this inconsistent [sic] crap, and he said it was one time.

And I said, was it one time that you put your had down her pants and inserted your finger into her vagina, and he said, yes, that was just one time, and reiterated, and there was nothing with that consistency like it was an on going situation.

Adjudication Hearing, Tr. at 104-105.

{¶34} Lieutentant Icenhour continued in his testimony,

BY MS. BATES:

Q As far as the time period that you talked to C.B. about, you said that he stated that he was about 14 or 15, does that sound right?

A Yeah, he gave different statements about a couple years ago, and he mentioned age 13, and then mentioned age 14 to 15 and then 15, so.

Adjudication Hearing, Tr. at 111-112.

{¶35} Detective Kimberly Mager testified as to her interview with E.O. She testified as to E.O.'s allegations, but did not provide information as to the incidents at Church of God or at Toppers. She did not provide dates or a time frame as to when the events occurred.

{¶36} C.B. testified on his own behalf at the adjudication hearing.[1] At the hearing, C.B. denied touching E.O. sexually. When asked why he had told Lieutenant Icenhour he had touched E.O. once, C.B. testified he felt like he was being broken down and was tired of being drilled. He also stated he thought admission to the behavior would get him out of the office.

*Adjudication of Delinquency and Classification*

{¶37} Via Judgment Entry of June 12, 2015, the trial court adjudicated C.B. delinquent of two counts of rape and two counts of gross sexual imposition.

---

[1] Appellant did not testify at the Suppression Hearing herein.

{¶38} The trial court conducted a dispositional hearing on July 16, 2015, and via Judgment Entry of the same date the trial court entered disposition. The trial court merged the two counts of gross sexual imposition finding the offenses allied offenses of similar import with the two counts of rape as the offenses did not have a separate animus; therefore, the trial court did not enter a separate dispositional order with regard to the two counts of gross sexual imposition.

{¶39} As to the first count of rape, the trial court committed C.B. to the Ohio Department of Youth Services ("ODYS") for institutionalization in a secure facility for an indefinite term consisting of a minimum period of two years and a maximum period not to exceed his attainment of the age of twenty-one years.

{¶40} As to the second offense of rape, the trial court committed C.B. to ODYS for institutionalization in a secure facility for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed his attainment of the age of twenty one years.

{¶41} The trial court ordered the sentences on Counts One and Two to run consecutively.

{¶42} Via Judgment Entry of July 28, 2015, the trial court classified C.B. a Tier III Juvenile Offender Registrant. The trial court's entry states,

> 2) The Court finds that the offenses of Rape, in violation of Section 2907.02(A)(1)(b) of the Ohio Revised Code, are Tier III sexually oriented offenses as defined by statute. The Court further recognizes and finds, however that under present Ohio law *while classification may be mandatory the Tier upon which the juvenile is placed is discretionary* with the Court and

the Court has the discretion to classify the juvenile pursuant to whatever Tier the Court determines to be appropriate in this case. The Court finds no basis in the evidence or any of the material received by the Court to classify the juvenile at the present time in any Tier other than as noted above.

3) The Court does hereby classify [C.B.] a Tier III Sex Offender.

(Emphasis added.)

**{¶43}** C.B. appeals, assigning as error,

**{¶44}** "I. THE JUVENILE COURT ERRED WHEN IT OVERRULED C.B.'S MOTION TO SUPPRESS, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

**{¶45}** "II. THE JUVENILE COURT ERRED WHEN IT FOUND C.B. DELINQUENT OF TWO COUNTS OF RAPE AND TWO COUNTS OF GROSS SEXUAL IMPOSITION WHEN THE STATE FAILED TO PROVE EVERY ELEMENT OF RAPE BEYOND A REASONABLE DOUBT AND WHEN THE ADJUDICATIONS FOR GROSS SEXUAL IMPOSITION WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. JUV.R. 29; FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION; OHIO CONSTITUTION, ARTICLE I, SECTION 16.

**{¶46}** "III. THE JUVENILE COURT ERRED WHEN IT CLASSIFIED C.B. AS A JUVENILE SEX OFFENDER REGISTRANT BECAUSE THE RECORD DID NOT ESTABLISH THAT HE WAS ELIGIBLE FOR REGISTRATION. FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION; OHIO CONSTITUTION, ARTICLE 1, SECTION 16.

**{¶47}** "IV. THE JUVENILE COURT ERRED WHEN IT CLASSIFIED C.B. AS A TIER III JUVENILE SEX OFFENDER REGISTRANT, IN VIOLATION OF C.B.'S RIGHT TO DUE PROCESS.   SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; OHIO CONSTITUTION, ARTICLE I, SECTION 10.

**{¶48}** "V. C.B. WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL FAILED TO RAISE A RULE 29 MOTION AT THE END OF THE STATE'S CASE AND WHEN COUNSEL FAILED TO OBJECT TO THE IMPROPER AND UNCONSTITUTIONAL CLASSIFICATION OF C.B. SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; OHIO CONSTITUTION, ARTICLE I, SECTION 10."

I.

**{¶49}** In the first assignment of error, C.B. maintains the trial court erred in denying his motion to suppress.  We disagree.

**{¶50}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether those findings of fact are against the manifest weight of the evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court's judgment for committing an error of law. *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming that the trial court's findings of fact are not against

the manifest weight of the evidence and that it has properly identified the law to be applied, an appellant may argue that the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; *Guysinger*.

**{¶51}** On October 23, 2014, Lieutenant Joel Icenhour went to Ashland High School and made contact with Assistant Principal Jon Walter indicating he had come to the school to interview two juveniles. Assistant Principal Walter offered his office for conducting the interviews. The office was "regular" in size, and had no windows. There was one desk in the office and a chair behind the desk with two additional chairs located away from the desk near one of the doors to the office.

**{¶52}** Principal Walter retrieved C.B. from class, and brought C.B. to Walter's office where Icenhour was waiting. Walter was present throughout the interview in his office, but did not ask questions. The doors to the office were closed, but not locked during the interview. Principal Walter explained on the way to the office C.B. was not under arrest and did not have to talk.

**{¶53}** At the outset, C.B. was told by Lieutenant Icenhour he was there to talk to him, he was not under arrest, he did not have to talk to him, and he was free to leave. C.B. consented orally to talking to Lieutenant Icenhour. The interview was recorded.

**{¶54}** Lieutenant Icenhour wore plain clothes, a badge, and had weapons on his person. The weapons were not plainly visible, but may have been seen by the juvenile.

{¶55} Prior to trial, C.B. moved to suppress statements made to Lieutenant Icenhour asserting he was not advised of his rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and his statements were not voluntary. *State v. Arrington*, 14 Ohio App.3d 111 (1984).[2]

{¶56} The requirements of *Miranda* are specifically limited to custodial interrogation. Before a court can exclude a statement made by an individual it must first decide whether the individual was in custody and law enforcement officers conducted an interrogation. In *State v. Mason*, 82 Ohio St.3d 144 (1998), the Ohio Supreme Court discussed the issue of what constitutes custodial interrogation. The Court stated, "…the determination as to whether a custodial interrogation has occurred requires an inquiry into how a reasonable man in the suspect's position would have understood his position."

{¶57} *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him in custody. It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited. *Oregon v. Mathiason*, 429 U.S. 492 (1977).

{¶58} In *JDB v. North Carolina*, 564 U.S. 261, 131 S.Ct. 2394 (2011), a thirteen year-old seventh grade student was questioned without being advised of his *Miranda* rights. A uniformed police officer on detail to the school took J.D.B. from his classroom to a closed-door conference room, where police and school administrators questioned him for at least 30 minutes. Before beginning, they did not give him *Miranda* warnings or the

---

[2] Appellant testified at the Adjudicatory Hearing herein he admitted to one act of touching E.O. herein and inserting his finger into her vagina during the October 23, 2014 interview with Lieutenant Icenhour, because he felt broken down and was tired of being drilled. However, Appellant did not testify at the January 14, 2015 Suppression Hearing.

opportunity to call his grandmother, his legal guardian, nor tell him he was free to leave the room. He first denied his involvement, but later confessed after officials urged him to tell the truth and told him about the prospect of juvenile detention. The Court held,

> This case presents the question whether the age of a child subjected to police questioning is relevant to the custody analysis of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed 2d 694 (1966). It is beyond dispute that children will often feel bound to submit to police questioning when an adult in the same circumstances would feel free to leave. Seeing no reason for police officers or courts to blind themselves to that commonsense reality, we hold that a child's age properly informs the *Miranda* custody analysis.

**{¶59}** In *JDB*, the juvenile was thirteen years old and in the seventh grade. Here, C.B. was sixteen years-old and in tenth grade. Unlike the juvenile in *JDB*, C.B. was clearly told Lieutenant Icenhour was only there to talk to him, he did not have to talk, and he was free to leave. Appellant can be heard in the recording consenting to the interview. We also note Lieutenant Icenhour was not in uniform as was the officer in *JDB*. Accordingly, we find the trial court reasonably concluded a juvenile in C.B's situation would have felt he was not in custody and free to terminate the interview.[3]

**{¶60}** C.B. further maintains his statements to Lieutenant Icenhour were not voluntarily made as Lieutenant used coercive tactics to induce C.B. into making the statements.

---

[3] While of little significance, it was Assistant Principal Jon Walker who removed C.B. from the classroom, not a uniformed police officer as in *JDB*.

**{¶61}** In *State v. Edwards*, 49 Ohio St.2d 31 (1976), the Ohio Supreme Court addressed the issue of voluntariness of a confession and adopted the "totality of the circumstances" analysis. The Court reaffirmed the test in *In re Watson* 47 Ohio St.3d 86 (1989), holding,

> In deciding whether a juvenile's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused, the length, intensity, and frequency of interrogation, and the existence of physical deprivation or inducement.

**{¶62}** Here, considering the totality of the circumstances, the recorded interview demonstrates Lieutenant Icenhour kept a calm demeanor throughout the entire interview, and did not use coercive tactics. The encounter was reasonable in duration, Lieutenant Icenhour did not engage in coercive or intimidating tactics, and C.B. was treated hospitably.

**{¶63}** We find the trial court did not err in finding a reasonable juvenile in C.B.'s situation would have understood he was not in custody, and C.B.'s statements were voluntarily made, without threat or coercion. Accordingly, we find the trial court properly overruled C.B.'s motion to suppress based upon the totality of the circumstances.

**{¶64}** The first assignment of error is overruled.

II

**{¶65}** In the second assignment of error, C.B. asserts his adjudication on two counts of rape and two counts of gross sexual imposition was against the manifest weight and sufficiency of the evidence

**{¶66}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries,* Stark App. No. CA5758 (Feb. 10, 1982). *In re A.W.*, 2013-Ohio-5617, ¶ 15. Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.; see also McDaniel v. Brown,* 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 2010–Ohio–1017, 926 N.E.2d 1239, ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 2010–Ohio–2720, 933 N.E.2d 296(5th Dist .), ¶ 68.

**{¶67}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St .3d 89, 1997–Ohio–355, 684 N.E.2d 668. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in

inducing belief." *Id.* at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed.1990) at 1594.

**{¶68}**    When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra,* 78 Ohio St.3d at 387, *quoting State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

**{¶69}**    C.B. maintains the State failed to prove the element of penetration necessary to sustain C.B.'s adjudication on two counts of rape.

**{¶70}**    C.B. testified at the adjudication hearing his date of birth is March 11, 1998, and he was seventeen years-old at the time of adjudication. During her interview with Detective Mager, E.O. testified the incidents first occurred approximately three years prior.

**{¶71}**    The trial court adjudicated C.B. delinquent on two counts of rape, in violation of R.C. 2907.02, which reads,

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

(a) For the purpose of preventing resistance, the offender substantially impairs the other person's judgment or control by administering any drug, intoxicant, or controlled substance to the other person surreptitiously or by force, threat of force, or deception.

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶72} It is undisputed E.O. was under the age of thirteen during all alleged incidents herein.

{¶73} At the adjudication hearing, E.O. testified C.B. touched her "bottom," which she explained meant her vaginal area. She related his hands went underneath her clothes, touching her skin and his fingers went inside her vagina. She stated it felt "bruised" when his fingers were inside.

{¶74} When asked if C.B. had touched her another time, E.O. related an incident at Toppers, a haircut place close to her house. She could not remember when the incident occurred, but described the feeling of digital penetration similar to that which occurred at the Church of God, when C.B. had put his finger inside her vagina

{¶75} Lieutenant Icenhour testified as to his interview with C.B. at Ashland High School during which C.B. admitted to touching E.O.'s vagina one time, putting his hand down her pants and inserting the tip of his finger into her vaginal cavity. Lieutenant

Icenhour admitted C.B. gave a variance of ages of when the incident occurred, at one point indicating age 15, then age 14 to 15, and then at another time age 13.

{¶76} C.B. admitted to Lieutenant Icenhour he was at the Church of God with E.O., at a spot where no one could see, and he had his hands down her pants and inserted his finger into her vagina. He denied a second occurrence.

{¶77} Based upon C.B.'s own admissions to digitally penetrating E.O. at the Church of God, and E.O.'s testimony presented at the adjudication hearing relative to the second occurrence at Toppers in which she describes a feeling of "feeling bruised" similar to that which occurred at the Church of God, we find the manifest weight and sufficiency of the evidence supports two counts of rape in violation of R.C. 2907.02(A)(1)(b).

{¶78} C.B. was further convicted of two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4) and R.C. 2152.02(F), a felony of the third degree if committed by an adult.

{¶79} The statute reads,

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> ***
>
> (4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

**{¶80}** We find the evidence set forth above supports C.B.'s adjudication on two counts of gross sexual imposition. We note again the trial court merged the two counts of gross sexual imposition as allied offenses to the two counts of rape.

**{¶81}** C.B.'s second assigned error is overruled.

III.

**{¶82}** In the third assignment of error, C.B. argues the trial court erred in classifying him a Juvenile Offender Registrant/Tier III Sex Offender as the record does not establish he is age eligible for registration, and the trial court did not exercise discretion in classifying C.B.

**{¶83}** Via Judgment Entry of July 28, 2015, the trial court classified Appellant a Juvenile Offender Registrant (JOR) and a Tier III sex offender. The trial court considered the evidence presented and took judicial notice of the proceedings in the case, finding the acts for which Appellant was adjudicated were all sexually oriented offenses and were committed after January 1, 2002. The trial court found C.B. was either fifteen or sixteen years of age at the time of the commission of the offenses. The court further found it was not required to classify C.B. as a JOR under Section 2152.82 as C.B. had not been previously adjudicated a delinquent child for a sexually oriented offense.[4]

**{¶84}** The trial court conducted the hearing pursuant to R.C. 2152.83. The trial court found the victim was extremely young, C.B. showed no genuine remorse, there is a continued risk to public safety and the public has an interest in C.B. being classified, and

---

[4] R.C. 2152.82 requires a trial court to mandatorily classify a child a juvenile offender registrant if the child previously was adjudicated a delinquent child for committing any sexually oriented offense or child – victim oriented offense.  Here, C.B. had not had any prior history of offenses.

C.B. has demonstrated an unwillingness or reluctance to participate in any treatment program, maintaining he has done nothing wrong. The trial court considered all of the evidence, and classified C.B. a Juvenile Offender Registrant.

**{¶85}** The trial court stated,

2) The Court finds that the offenses of Rape, in violation of Section 2907.02(A)(1)(b) of the Ohio Revised Code, are Tier III sexually oriented offenses as defined by statute. The Court further recognizes and finds, however, that under present Ohio law while *classification may be mandatory* the Tier upon which the juvenile is placed is discretionary with the Court and the Court has the discretion to classify the juvenile pursuant to whatever Tier the Court determines to be appropriate in this case. The Court finds no basis in the evidence or any of the material received by the Court to classify the juvenile at the present time in any Tier other than as noted above.

3) The Court does herby classify [C.B.] as a Tier III Sex Offender.

(Emphasis added.)

**{¶86}** In classifying juveniles as sex offenders, the juvenile court has discretion to determine which tier level to apply. *In re D.P.,* 11th Dist. No. 2008–L–186, 2009-Ohio-6149, 2009 WL 4021187, ¶ 18, *rev'd on other grounds* ("the statutes vest a juvenile court with full discretion to determine whether to classify a delinquent child as a Tier I, Tier II, or Tier III offender") (citation omitted.)

**{¶87}** The Eleventh District Court of Appeals in *In re D.P.,* supra, explained Senate Bill 10 as it relates to juvenile offenders,

Senate Bill 10, as in earlier versions of Ohio's sex offender registration statutes, applies to both adult sex offenders and juvenile sex offenders. See R.C. 2950.01(B)(1) ("sex offender" includes a person who is "adjudicated a delinquent child for committing, or has been adjudicated a delinquent child for committing any sexually oriented offense"). The classification scheme for juvenile sex offenders is governed by both R.C. Chapter 2152 and R.C. Chapter 2950. As with the earlier version of the law, Senate Bill 10 requires the juvenile court to engage in a two-step process. See *In re C.A.,* 2d Dist. No. 23022, 2009-Ohio-3303, ¶ 37.

First, the court must determine whether the juvenile sex offender should be designated as a juvenile offender registrant ("JOR") and, therefore, subject to classification and the attendant registration requirements. For certain juvenile sex offenders, the JOR designation is mandatory. See R.C. 2152.82 (applicable to juvenile sex offenders 14 or older who had previously committed a sexually oriented offense); R.C. 2152.83(A)(1) (applicable to juvenile offenders 16 or older); and R.C. 2152.86 (applicable to "serious youthful offenders" who are additionally designated as "public registry-qualified juvenile offender registrant"). *For juvenile offenders who are 14 or 15 without prior adjudication for a sexually oriented offense and who do not fall within R.C. 2152.86, the trial court has the discretion to determine whether the juvenile offender should be considered a JOR therefore subject to the registration requirement. See R.C. 2152.83(B)(1) and In re C.A. at ¶ 37.*

Second, the statutory scheme for the juvenile sex offenders requires the juvenile court to conduct a hearing to determine the tier in which to classify the juvenile offender. R.C. 2152.831(A); R.C. 2152.83(A)(2). Unlike the adult sex offenders, who are classified based on the offense committed, the tiers for the juveniles are determined somewhat differently. For instance, a Tier III sex offender is defined, in part, as a "sex offender who is adjudicated a delinquent child for committing or has been adjudicated a delinquent child for committing any sexually oriented offense and who a juvenile court, pursuant to section 2152.82, 2152.83, 2152.84, or 2152.85 of the Revised Code, classifies a tier III sex offender/child-victim offender *relative to the offense.*" (Emphasis added in original.) R.C. 2950.01(G)(3). Unlike the automatic classification of the adult sex offenders, the juvenile court is authorized to exercise its discretion at the classification hearing. Our interpretation of the statute as vesting the juvenile court with discretion in classifying the juvenile offenders is shared by several other appellate districts. See *In re G.E.S.,* 9th Dist. No. 24079, 2008-Ohio-4076, ¶ 37 (the statutes vest a juvenile court with full discretion to determine whether to classify a delinquent child as a Tier I, Tier II, or Tier III offender); *In re S.R.P.,* 12th Dist. No. CA2007-11-027, 2009-Ohio-11, ¶ 43 (the appellate court read Senate Bill 10 as giving juvenile courts the discretion to determine which tier level to assign to a delinquent child; regardless of the sexually oriented offense that the child committed, Senate Bill 10 does not forbid a juvenile court from taking into consideration multiple factors, including a reduced likelihood of recidivism); *In re Adrian R.,* 5th Dist.

No. 08-CA-17, 2008-Ohio-6581, ¶ 17; *In re J.M.,* 8th Dist. No. 91800, 2009-Ohio-2880, ¶ 11; *In re C.A.* at ¶ 68

(Emphasis added.)

**{¶88}** Upon review, we believe the trial court may have misunderstood its discretion in classifying C.B. The trial court properly conducted a hearing following disposition exercising its discretion to classify C.B. a juvenile offender registrant. The trial court considered the evidence, C.B.'s lack of remorse, the age of the victim, and treatment options in deciding against a lower level tier classification. These factors would support the trial court's classification of C.B. as a JOR/Tier III sex offender.

**{¶89}** However, the trial court's Judgment Entry states "The Court further recognizes and finds, however, that under Ohio law while classification may be mandatory, the Tier upon which the juvenile is placed is discretionary with the Court and the Court…"[5] The trial court seemed to look to the offense of Rape as a Tier III offense. At the adjudication hearing herein, C.B. testified at one point he was 15 years old at the time of the offense, and at another point he states he was 14 or 15, and another time he states he was 13. Therefore, the trial court had discretion as to whether to classify C.B. a JOR subject to registration and the trial court erred in finding classification mandatory. See, *In Re: D.S.*, 5th Dist. 13 CA 58, 2014 Ohio 867.

**{¶90}** The third assignment of error is sustained.

IV.

**{¶91}** In the fourth assignment of error, C.B. maintains the trial court's classification of C.B. as a Tier III Juvenile Offender Registrant and Tier III sex offender

---

[5] We recognize the possibility the trial court may have misspoken.

violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 9 and 16 of the Ohio Constitution.

**{¶92}** Specifically, C.B. argues the juvenile courts have exclusive jurisdiction over children who are alleged delinquent pursuant to R.C. 2151.239(A)(1). However, the juvenile court's jurisdiction ends at the child's twenty-first birthday. A narrow exception exists for youth subject to Ohio's juvenile offender registration and notification statutes. R.C. 2151.23(A)(15). R.C. Sections 2152.83(E), 2152.84 and 2152.85, when read together, grant juvenile courts jurisdiction over adults, who were formerly delinquent children, where jurisdiction would not otherwise exist. C.B. maintains this is contrary to the purposes of juvenile delinquency dispositions.

**{¶93}** In *In re D.S.*, 5th Dist. No. 13-CA-58, 2014-Ohio-867, appeal allowed, 2014-Ohio-2725, ¶¶ 3-4, 139 Ohio St. 3d 1428, 11 N.E.3d 284, and aff'd, 2016-Ohio-1027, ¶¶ 3-4, the juvenile court's disposition entry did not include a determination as to how old D.S. was at the time the offenses were committed. The December 8, 2010 disposition entry stated, "classification as a juvenile sex offender registrant is deferred or delayed pending efforts at rehabilitation while committed to ODYS." Following, D.S.'s release from ODYS, the trial court conducted a classification hearing. The trial court considered evidence as to the age of D.S. at the time the offenses were committed. The court determined D.S. was fourteen years of age at the time at least one of the offenses was committed; therefore, D.S. was subject to classification. Following the classification hearing, via Judgment Entry of June 24, 2013, the trial court overruled Appellant's motion to dismiss and the juvenile court classified D.S. a Tier II Juvenile Sex Offender Registrant with a duty to comply with registration requirements every 180 days for 20 years.

**{¶94}**    This Court held,

The statute, therefore, specifically, continues the jurisdiction of the

juvenile court to classify the juvenile beyond their twenty-first birthday. The

legislature retains the power to define the jurisdiction of the courts as long as

powers inherently reserved for the judiciary are not infringed upon. *Seventh*

*Urban, Inc. v. University Circle,* (1981) 67 Ohio St.2d 19.

In the case at bar, the classification of D.S. as a juvenile offender

registrant was not mandatory under the circumstances of this case because

D.S. was fourteen years old at the time of at least one offense, did not have

a prior adjudication for a sexually oriented offense, and had not been labeled

a serious youthful offender. See R.C. 2152.83(B)(1), 2152.82, and 2152.86.

As classification was not mandated by statute, the juvenile court was given

the broad discretion to determine whether D.S. should be classified as a

juvenile offender registrant and under which tier D.S. should be placed.

**{¶95}**    Recently, this Court addressed the issues raised herein in *In Re D.R., a*

*Minor Child* 5th Dist No. 13CA27, 2014–Ohio–588, holding:

Laws limiting rights, other than fundamental rights, are constitutional

with respect to substantive due process and equal protection if the laws are

rationally related to a legitimate goal of government. *State v. Thompkins*

(1996), 75 Ohio St.3d 558.

" * * *

In the case at bar, we cannot say that the classification authorized

by R.C. 2152.83(B) is irrational. Pursuant to R.C. 2152.83(B), the juvenile

court judge retains discretion to deal individually with juvenile offenders. *In Re C.P.,* (citation omitted). 'Fundamental fairness requires that the judge decide the appropriateness of any such penalty.' *Id.* at ¶ 78. Although imposition of R.C. 2152.83(B) registration requirements may be punitive, they may help achieve the goal of rehabilitation by motivating the juvenile to comply with treatment in order to reduce or eliminate the registration requirement. *In Re I.A,* 2nd Dist. Montgomery No. 25078, 2012 Ohio 4973.

Accordingly, D.R. has failed to show that a JOR classification that extends beyond a child's twenty-first birthday violates either the United States or Ohio constitutional prohibitions against cruel and unusual punishment or the requirements of due process.\*\*\*

**{¶96}** Pursuant to this Court's previous holding in *In re D.S.*, supra, and in *In re D.R.,* supra, C.B.'s fourth assignment of error is overruled.

V.

**{¶97}** In the fifth assignment of error, C.B. maintains he was denied the effective assistance of trial counsel where his trial counsel failed to raise objections to the insufficiency of the evidence presented at trial pursuant to Juvenile Rule 29, and to object to the constitutionality of his JOR and Tier III sex offender registration.

**{¶98}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838,

122 L.Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶99}** In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley*, 42 Ohio St.3d at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.

**{¶100}** The United States Supreme Court and the Ohio Supreme Court have held that a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley*, 42 Ohio St.3d at 143, 538 N.E.2d 373, quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674.

**{¶101}** "When counsel's alleged ineffectiveness involves the failure to pursue a motion or legal defense, this actual prejudice prong of *Strickland* breaks down into two components. First, the defendant must show that the motion or defense 'is meritorious,' and, second, the defendant must show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense pursued." *In re Adrian R.*, 5th Dist. No. 08–CA–17, 2008-Ohio-6581, 2008 WL 5207301, at ¶ 23, citing *Kimmelman v. Morrison* (1986), 477 U.S. 365, 375, 106 S.Ct. 2574, 91 L.Ed.2d 305.

**{¶102}** Based upon our analysis and disposition of C.B.'s second assignment of error, we find C.B.'s arguments regarding failure of counsel to challenge the sufficiency and/or weight of evidence moot.

**{¶103}** As to C.B.'s arguments relative to his classification as a JOR/Tier III sex offender, in accordance with our analysis and disposition of the third assignment of error, we likewise find C.B.'s argument in regard thereto moot.

**{¶104}** The fifth assignment of error is overruled.

**{¶105}** The judgment of the Ashland County Court of Common Pleas, Juvenile Division is affirmed, in part, reversed, in part, and remanded for redetermination of Appellant's JOR status.

By: Hoffman, P.J.

Delaney, J. and

Baldwin, J. concur