[Cite as *Scott v. First Choice Auto Clinic, Inc.*, 2022-Ohio-3405.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Geoffrey Scott, | : | |
| Plaintiff-Appellee, | : | No. 22AP-157 |
| | | (C.P.C. No. 19CV-725) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| First Choice Auto Clinic, Inc. et al., | : | |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on September 27, 2022

**On brief:** *E. Ray Critchett, LLC,* and *E. Ray Critchett,* for appellee.

**On brief:** *Eric E. Willison,* for appellants.

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Defendants-appellants, First Choice Auto Clinic, Inc. ("First Choice") and Brian K. Newsom, appeal from a judgment of the Franklin County Court of Common Pleas granting judgment and awarding damages to plaintiff-appellee Geoffrey Scott. Because the judgment entry appealed from is not a final, appealable order, we dismiss the appeal.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Scott owns a 1963 Austin Healey 3000 Mark II Model BJ-7 automobile ("the Healey"). In 2016, Scott contacted First Choice about restoring the metal frame and chassis of the Healey. Scott spoke with Newsom, the owner of First Choice, about the restoration project, which would involve a replacement frame and some replacement components that Scott would supply, along with some original components that First Choice would remove

from the original frame, repair, and attach to the replacement frame. Scott and Newsom agreed that the project would proceed in two phases, as later described in Scott's complaint:

> Phase One of the Project required [Scott] to deliver the bare frame and chassis, and supply the new frame and component parts of the chassis to [First Choice and Newsom]. [First Choice and Newsom] would media blast of [sic] all steel components, repair and/or remove and replace all corroded components of the front and rear bulkheads, separate those front and rear bulkheads from the corroded frame, re-attach the repaired bulkheads to the new frame, and install new floorpans, with all components to be welded, seam sealed and painted with an epoxy primer. All the exterior panels would properly align, the door gaps would permit the doors to open and close normally and the convertible top would align and close properly. The Healey would then be delivered to [Scott] for reassembly of the engine, transmission, suspension, electrical and other mechanical components by [Scott].
>
> Phase Two of the Project would begin when [Scott] returned the reassembled Healey to [First Choice and Newsom] for exterior bodywork, paint and fitting of the exterior panels.

(Compl. at ¶ 25-26.)

{¶ 3} Phase One of the restoration project commenced in September 2016, when Scott delivered the bare frame and chassis of the Healey, along with the new frame and replacement parts, to First Choice. Between October 2016 and May 2017, Scott paid First Choice a total of $16,598 for work on Phase One of the project. Phase One was completed and the Healey was delivered to Scott in May 2017 for reassembly of the engine and other components. Scott returned the Healey to First Choice in September 2017 to begin Phase Two of the project.

{¶ 4} In October 2017, Newsom informed Scott that " 'nothing is fitting and lining up on the car.' " (Compl. at ¶ 41.) Scott visited First Choice and observed that the body panels on the Healey did not align, the doors would not close, and certain components had been cut and modified in an attempt to make the body panels align. Scott claims First Choice's body shop manager explained that much of the Phase One work had been done incorrectly by a young employee, and that Newsom promised to correct the errors. Scott agreed to allow First Choice to correct the errors and purchased certain replacement components to be put on the Healey. Scott claims Newsom agreed that First Choice could correct the problems and complete Phase Two of the project by March 1, 2018.

{¶ 5}   The restoration work was not completed by March 1, 2018; ultimately, in April 2018, Scott demanded that First Choice return the Healey to him.  Scott had the Healey moved to another repair shop, which completed the restoration project.  Scott alleges the Healey as restored is approximately one-half inch shorter than its original length due to the modifications required to adjust for the Phase One errors.

{¶ 6}   Scott filed suit against First Choice and Newsom, asserting claims for breach of contract, violation of the Consumer Sales Practices Act ("CSPA"), fraud and negligent misrepresentation, respondeat superior, and unjust enrichment.  First Choice and Newsom filed counterclaims against Scott for breach of contract, unjust enrichment, and promissory estoppel.  Scott moved for summary judgment on his CSPA claim, citing Ohio Administrative Code provisions defining acts and practices that violate the CSPA and asserting First Choice and Newsom violated those rules as a matter of law.  The trial court granted summary judgment for Scott on his CSPA claim and referred the case to a magistrate for a damages hearing.  When the damages hearing began, counsel for First Choice and Newsom noted that several of Scott's claims, as well as First Choice and Newsom's counterclaims, remained unresolved.  After consulting with the trial judge, the magistrate vacated the damages hearing and the case was referred for a trial before the magistrate.

{¶ 7}   Following the trial, the magistrate issued a decision noting that summary judgment had been granted in favor of Scott on the CSPA claim and recommending that the trial court rule in favor of Scott on his claims for breach of contract, negligent misrepresentation, and fraud.  The magistrate recommended the court award treble damages of $49,794.00 on the CSPA claim, $9,409.00 for out-of-pocket expenses, and $10,391.75 in attorney fees.

{¶ 8}   First Choice and Newsom filed objections to the magistrate's factual and legal conclusions, including objections to the magistrate's calculation of damages, the recommendation that treble damages be awarded, and the recommendation that attorney fees be awarded.  The trial court overruled First Choice and Newsom's objections and adopted the magistrate's decision, awarding the damages, expenses, and attorney fees recommended by the magistrate.  First Choice and Newsom timely appeal the trial court's decision.

## II. ASSIGNMENTS OF ERROR

{¶ 9}  First Choice and Newsom assign the following as trial court error:

[1.] The Trial Court erred when it overruled [R. 109] the Appellants' objection to an award by the Magistrate [R. 93] on the grounds of both Breach of Contract and Unjust Enrichment.

[2.] The Trial Court Trial Court [sic] erred when it overruled [R. 109] the Appellants' objection to the Magistrate's Award [R. 93] of treble damages.

[3.] The Trial Court erred when it overruled [R. 109] the Appellants' objection to an award of the Magistrate [R. 93] regarding the award of attorney fees to Appellee.

[4.] The Trial Court erred when it overruled [R. 109] the Appellants' objections to an award of the Magistrate [R. 93] which was based upon hearsay evidence supposedly redacted.

[5.] The Trial Court erred when it did not overrule [R. 109] the finding of the Magistrate [R. 93] Appellants had engaged in fraud and negligent misrepresentation.

## III. LEGAL ANALYSIS

{¶ 10}  Based on our review of the procedural history in this case, we begin by considering whether we have subject-matter jurisdiction over this appeal. "Because a court is powerless to hear a case without subject-matter jurisdiction, a court may sua sponte raise the issue of subject-matter jurisdiction and may dismiss the case if it finds that it lacks subject-matter jurisdiction over it." *Pointer v. Smith*, 10th Dist. No. 20AP-555, 2021-Ohio-2247, ¶ 8. *See also Ford Motor Credit Co. v. Ryan & Ryan, Inc.*, 10th Dist. No. 14AP-782, 2014-Ohio-5671, ¶ 12, fn. 1 ("An appellate court may raise the question of its subject matter jurisdiction sua sponte.").[1]

{¶ 11}  Under the Ohio Constitution, courts of appeals have "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." Article IV, Section 3, Ohio Constitution. "If a judgment is not a final, appealable order, then an appellate court has no jurisdiction to review the matter, and it must be dismissed." *In re Special Grand Jury Investigation*, 10th Dist. No. 17AP-446, 2018-Ohio-760, ¶ 6.

---

[1] Because there was no oral argument in this case and the court raises the jurisdictional issue sua sponte, the parties have not addressed whether we have subject-matter jurisdiction over this appeal.

{¶ 12} A final order is " ' "one disposing of the whole case or some separate and distinct branch thereof." ' " *VanDyke v. Columbus*, 10th Dist. No. 06AP-1114, 2007-Ohio-2088, ¶ 6, quoting *Noble v. Colwell*, 44 Ohio St.3d 92, 94 (1989), quoting *Lantsberry v. Tilley Lamp Co.*, 27 Ohio St.2d 303, 306 (1971). " 'A judgment that leaves issues unresolved and contemplates that further action must be taken is not a final appealable order.' " *Id.*, quoting *State ex rel. Keith v. McMonagle*, 103 Ohio St.3d 430, 2004-Ohio-5580, ¶ 4.

{¶ 13} "An order which adjudicates one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties must meet the requirements of R.C. 2505.02 and Civ.R. 54(B) in order to be final and appealable." *Noble* at syllabus. *See also VanDyke* at ¶ 7 ("To be final and appealable, an order that adjudicates one or more but fewer than all the claims or the rights and liabilities of fewer than all the parties, as does the order in the present case, must meet the finality requirements of R.C. 2505.02 and must properly contain the lower court's certification pursuant to Civ.R. 54(B)."). Under Civ.R. 54(B), "[w]hen more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay."

{¶ 14} In this case, the trial court never entered judgment on the counterclaims that First Choice and Newsom asserted against Scott.[2] Therefore, the trial court did not resolve all claims asserted in the action. The trial court's "final judgment entry" does not contain Civ.R. 54(B) language that there was no just cause for delay, and it is immaterial that the entry is captioned as a "final judgment entry." *VanDyke* at ¶ 8 ("[T]he fact that the judgment entry states that it is a 'final entry' is immaterial."). "Without an express

---

[2] The trial court's summary judgment decision only addressed Scott's CSPA claim. Thus, all other claims and counterclaims remained pending after that decision. The magistrate noted at the beginning of the trial that "[a]lso pending are counterclaims by First Choice and Brian Newsom: Breach of contract, unjust enrichment, and promissory estoppel." (Tr. at 6-7.) The trial court decision overruling objections to the magistrate's decision also noted that the damages hearing had been vacated because several claims and counterclaims remained pending. However, despite acknowledgment by the magistrate and the trial court that First Choice and Newsom's counterclaims remained pending, the magistrate's decision, the trial court decision overruling objections to the magistrate's decision, and the "final judgment entry" did not expressly address the counterclaims.

determination that there is no just cause for delay, any order, that adjudicates fewer than all the claims does not terminate the action." *Id.*

{¶ 15} We note that in cases where not all the claims or parties are expressly adjudicated by the trial court, "if the effect of the judgment as to some of the claims is to render moot the remaining claims or parties, then compliance with Civ.R. 54(B) is not required to make the judgment final and appealable." *General Accident Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 21 (1989). *See also Wise v. Gursky*, 66 Ohio St.2d 241, 243 (1981) ("We hold that a judgment in an action which determines a claim in that action and has the effect of rendering moot all other claims in the action as to all other parties to the action is a final appealable order pursuant to R.C. 2505.02, and Civ.R. 54(B) is not applicable to such a judgment."). However, that is not the circumstance in this case. First Choice and Newsom's counterclaims against Scott were based on work performed on or after October 12, 2017, i.e., during Phase Two of the restoration project. The trial court's judgment in favor of Scott on his claims does not necessarily render those counterclaims moot.

{¶ 16} Because the counterclaims are still pending and the trial court's judgment entry does not contain "no just reason for delay" language pursuant to Civ.R. 54(B), the trial court's judgment is not a final, appealable order. Accordingly, we lack jurisdiction over the appeal, and it must be dismissed.

## IV. CONCLUSION

{¶ 17} For the foregoing reasons, the appeal is dismissed.

*Appeal dismissed.*

MENTEL and McGRATH, JJ., concur.

_____