[Cite as *Buckeye Lake v. Sheets*, 2025-Ohio-1586.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| VILLAGE OF BUCKEYE LAKE, | : | | JUDGES: |
| | : | | Hon. Craig R. Baldwin, P.J. |
| Plaintiff - Appellee | : | | Hon. William B. Hoffman, J. |
| | : | | Hon. Andrew J. King, J. |
| -vs- | : | | |
| | : | | |
| REBECCA SHEETS, | : | | Case Nos. 2024 CA 0077 |
| | : | | 2024 CA 0078 |
| Defendant - Appellant | : | | |
| | : | | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Licking County
                                                         Municipal Court, Case Nos. 24 CRB
                                                         00471 and 24 CRB 00472

JUDGMENT:                                      Affirmed

DATE OF JUDGMENT:                      May 2, 2025

APPEARANCES:

For Plaintiff-Appellee                          For Defendant-Appellant

BRADLEY S. NICODEMUS                 JAMES P. CONNORS
The Nicodemus Law Office, LPA        Law Office of James P. Connors
1409 West Market Street                    580 S. High St., Ste. 150
Baltimore, Ohio 43105                        Columbus, Ohio 43215

*Baldwin, P.J.*

{¶1}    The appellant, Rebecca Sheets, appeals the decisions of the trial court denying her motion to dismiss, and finding her guilty of various zoning regulation and property maintenance code violations. Appellee is the Village of Buckeye Lake.

## STATEMENT OF THE FACTS AND THE CASE

{¶2}    In March of 2023, the appellee issued a zoning violation notice to the appellant relating to the presence of motor vehicles on her property in contravention of the Village of Buckeye Lake Zoning Regulations, Section 905, which provides:

**PARKING AND STORAGE OF CERTAIN VEHICLES**

Automotive vehicles or trailers of any kind or type without current license plates shall not be parked or stored on any residentially zoned property other than in completely enclosed buildings. However, one boat and one trailer may be stored in the rear yard if the vehicles have a current license.

In addition, the appellee contended that the appellant's property was in violation of Section 302.8 of the International Property Maintenance Code ("IPMC")[1], which provides:

**Motor vehicles.** Except as provided for in other regulations, inoperative or unlicensed motor vehicles shall not be parked, kept or stored on any *premises,* and vehicles shall not at any time be in a state of major disassembly, disrepair, or in the process of being stripped or dismantled.

---

[1] The IPMC is a publication that "establishes minimum requirements for the maintenance of existing buildings through model code regulations that contain clear and specific property maintenance and property improvement provisions." *International Property Maintenance Code,* iii (2021).

Painting of vehicles is prohibited unless conducted inside an *approved* spray booth.

(Emphasis original.) Based upon these alleged violations of the Zoning Regulations and the IPMC, the appellee filed a zoning violation action against the appellant in Mayor's Court claiming that the appellant kept, parked, or stored inoperative or unlicensed motor vehicles on her premises, and referenced "several motor vehicles parked on lawn, two tow trucks and several boats parked on premises." The matter was continued several times.

{¶3}     In October of 2023, the appellant attended Mayor's Court with counsel on the March 2023 zoning matter, at which time the appellee issued five new zoning violation notices to the appellant for violations of Section 905 of the Village of Buckeye Lake Zoning Regulations, cited above; and, Sections 302.1, 302.7, 304.1, and 304.6 of the IPMC, which provide as follows:

> **302.1  Sanitation.** *Exterior property* and *premises* shall be maintained in a clean, safe and sanitary condition. The *occupant* shall keep that part of the *exterior property* that such *occupant* occupies or controls in a clean and sanitary condition.

> **302.7  Accessory structures.** Accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair.

> **304.1 General.** The exterior of a *structure* shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare.

**304.6 Exterior walls.** Exterior walls shall be free from holes, breaks, and loose or rotting materials; and maintained weatherproof and properly surface coated where required to prevent *deterioration.*

(Emphasis original.) These violations were filed as a separate case in the Village Mayor's Court, resulting in two cases – one for the alleged March 2023 violation; and a second for the five alleged October 2023 violations.

{¶4} The Mayor's Court matters were stayed when the appellant filed a civil lawsuit in the Licking County Common Pleas Court, being Case No. 23 CV 01184 and captioned *Rebecca E. Sheets v. Village of Buckeye Lake, et al.*, in which the appellant asserted claims against the appellee, among others, for allegedly causing damage to her property. The appellee answered and counterclaimed against the appellant, alleging that her property was a nuisance pursuant to R.C. Chapter 3767. The appellant moved to dismiss the appellee's nuisance counterclaim pursuant to Civ.R. 12(B)(6). On March 22, 2024, the trial court dismissed the appellee's counterclaim in an Order Granting Plaintiff's Motion to Dismiss Counterclaim. The Order did not dispose of all claims against all parties, and did not contain the "no just cause for delay" language of Civ.R. 54(B). As of this writing, the Common Pleas Court matter remains pending.

{¶5} Following dismissal of its nuisance counterclaim in the Common Pleas Court civil matter, the appellee moved for reactivation of the zoning violation cases and requested the transfer of both cases from Mayor's Court to the Licking County Municipal Court for purposes of trial. The appellant filed a motion to dismiss the Municipal Court matters, arguing that the Common Pleas Court's dismissal of the appellee's R.C. 3767 nuisance counterclaim in the Common Pleas civil case vitiated the zoning violation

matters in the Municipal Court cases based upon the doctrines of res judicata and collateral estoppel. The trial court disagreed, and on June 25, 2024, issued a Judgment Entry denying the appellant's motion to dismiss.

{¶6} A bench trial on the appellant's zoning violations proceeded before the Municipal Court on June 28, 2024. The court heard the testimony of Village of Buckeye Lake Code Enforcement Officer Rex Adkins. Mr. Adkins provided extensive and detailed testimony regarding the state of the appellant's property, including the identification of photographs he took depicting numerous vehicles parked on the property, many without license plates, and many of which appeared to be "junk" vehicles; a car lift; two pontoon boats, and what appeared to be other boats; at least two tow trucks; a dump bed for a for a pickup or dump truck; generally unsanitary conditions, including debris, chipping paint, a gutter that had fallen down, a hole in an area over the porch, bare wood where there should have been siding, a falling soffit, and peeling and chipping paint; and, structures with exposed wood on exterior walls. The appellant also testified regarding her history with the Village of Buckeye Lake, the state of her property, and why her property was not in violation of the appellee's zoning regulations and the IPMC.

{¶7} The trial court ascertained the veracity of the witnesses, evaluated the evidence, and found the appellant guilty of four out of the six zoning and IPMC violations. Sentencing occurred on August 14, 2024, and the appellant filed a timely appeal in which she sets forth the following three assignments of error:[2]

---

[2] For purposes of clarity, there were two separate municipal case numbers, and there are two appellate case numbers: 24 CA 00077 is the appeal of 24 CRB 00471, which is the case number for the five zoning violations filed against the appellant in October of 2023; 24 CA 00078 is the appeal for 24 CRB 00472, which is the case number for the first zoning violation filed against the appellant in March of 2023.

**{¶8}** THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING APPELLANT'S MOTION TO DISMISS BASED ON *RES JUDICATA* AND COLLATERAL ESTOPPEL. (*JUDGMENT ENTRY*, JUNE 25, 2024; R. 18.)

**{¶9}** THE TRIAL COURT ERRED BY FAILING TO FIND THAT THE STATE'S EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT A CRIMINAL CONVICTION AFTER VIEWING THE EVIDENCE IN A LIGHT MOST FAVORABLE TO THE PROSECUTION, AS ANY RATIONAL TRIER OF FACT WOULD HAVE FOUND THE ESSENTIAL ELEMENTS OF THE CRIME NOT PROVEN BEYOND A REASONABLE DOUBT. (*JUDGMENT ENTRY*, JULY L, 2024; R. 23.)

**{¶10}** THE TRIAL COURT'S FINDING OF GUILTY ON FOUR CHARGES WAS AGAINST THE MANIFEST WEIGHT OF EVIDENCE. (*JUDGMENT ENTRY*, JULY 1, 2024; R. 23.)

### ASSIGNMENT OF ERROR I

**{¶11}** The appellant submits in assignment of error number one that the doctrines of res judicata and collateral estoppel proscribe the appellee's pursuit of zoning and IPMC violations against her in the Municipal Court matters based upon the Common Pleas Court's dismissal of the appellee's counterclaim. We disagree.

### Standard Of Review

**{¶12}** A trial court's decision on a Civ.R. 12(B) motion to dismiss is reviewed de novo. *Dover Chemical Corp. v. Dover*, 2022-Ohio-2307, ¶ 32 (5th Dist.), citing *Huntsman v. State*, 2017-Ohio-2622, ¶ 20 (5th Dist.), citing *Greeley v. Miami Valley Maintenance Contractors Inc.*, 49 Ohio St.3d 228 (1990). A motion to dismiss for failure to state a claim upon which relief can be granted is procedural, and as such tests the sufficiency of the

complaint. *State ex rel. Hanson v. Guernsey County Bd. of Commissioners*, 65 Ohio St.3d 545 (1992). Under a de novo analysis, all factual allegations of the complaint must be accepted as true, and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber*, 57 Ohio St.3d 56 (1991). In order to dismiss a complaint pursuant to Civil Rule 12(B)(6), it must appear beyond a doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143 (1991).

**Analysis**

{¶13} Dismissal of the appellee's nuisance counterclaim in the Common Pleas Court matter does not provide a basis for the application of res judicata and collateral estoppel in the within matters. First, the court's dismissal of the appellee's nuisance counterclaim did not dispose of all the claims presented in the Common Pleas Court matter. In fact, the Common Pleas Court matter is still pending.

{¶14} Civ.R. 54 addresses judgments and costs, and provides in pertinent part:

**(B) Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the

claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

{¶15} The Common Pleas Court case involved claims made by the appellant against the appellee and other defendants. The Order dismissing the appellee's nuisance counterclaim did not dispose of all the claims, and did not contain a determination "that there is no just reason for delay." The Order therefore adjudicated fewer than all the claims pending the appellant's civil case. As such, the Common Pleas Court's Order granting dismissal of the appellee's nuisance counterclaim is interlocutory, and cannot provide the basis for the application of res judicata or collateral estoppel herein.

{¶16} The issue regarding the finality of an order, res judicata, and collateral estoppel was addressed by this Court in the case of *Anderson v. Eyman*, 2009-Ohio-102 (5th Dist.), in which the Court held:

> "The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel)." *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 381, 653 N.E.2d 226. The doctrine of collateral estoppel "holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action

in the two actions be identical or different." *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140; see also *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph three of the syllabus. Essentially, collateral estoppel prevents parties from relitigating facts and issues that were fully litigated in a previous case. *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 64, 765 N.E.2d 345. However, in order for the doctrine to apply, the issues must have been determined by a final, appealable order. *State v. Williams* (1996), 76 Ohio St.3d 290, 294, 667 N.E.2d 932.

*Id.* at ¶ 28. More recently, the Tenth District Court of Appeals held:

The doctrine of res judicata "bars a party from relitigating the same issue or claim that has already been decided in a final, appealable order or a valid, final judgment in a prior proceeding and could have been raised on appeal in that prior proceeding." *AJZ's Hauling, L.L.C. v. Trunorth Warranty Programs of N. Am.*, 174 Ohio St.3d 241, 2023-Ohio-3097, 236 N.E.3d 176, ¶ 15. Because interlocutory orders are not final, the doctrine of res judicata does not apply to them. *Beck-Durell Creative Dept., Inc. v. Imaging Power, Inc.*, 10th Dist. No. 02AP-281, 2002-Ohio-5908, 2002 WL 31417757, ¶ 16. The September 22, 2021 dismissal entry was an interlocutory order because it did not resolve all the pending claims and it did not contain Civ.R. 54(B) language. *See Scott v. First Choice Auto Clinic, Inc.*, 10th Dist. No. 22AP-157, 2022-Ohio-3405, 2022 WL 4482035, ¶ 14, quoting *VanDyke v.*

*Columbus*, 10th Dist. No. 06AP-1114, 2007-Ohio-2088, 2007 WL 1248512,

¶ 8 (" 'Without an express determination that there is no just cause for delay,

any order, that adjudicates fewer than all the claims does not terminate the

action.' "). Consequently, res judicata did not bar the litigation of the viability

of the amended claim for breach of contract on summary judgment.

*Innovative Architectural Planners, Inc. v. Ohio Dep't of Admin. Servs.*, 2024-Ohio-824, ¶

44 (10th Dist.).

**{¶17}** The Common Pleas Court's Order dismissing the appellee's counterclaim

is interlocutory and, in addition, did not contain Civ.R. 54(B) language. Accordingly, it is

not a final appealable order and therefore cannot provide the basis for application of res

judicata or collateral estoppel. The appellant's first assignment of error is, therefore,

without merit.

**{¶18}** Further, the Common Pleas Court matter and Municipal Court matter are

separate and distinct civil and criminal matters. As such, the doctrines of res judicata and

collateral estoppel do not apply.

**{¶19}** The Ohio Supreme Court addressed the application of res judicata in

distinct cases in *Cleveland Metropolitan Bar Association v. Whipple*, 2022-Ohio-510, in

which an attorney against whom disciplinary proceedings were pending argued, inter alia,

that an earlier decision in a civil matter denying a motion to sanction him for frivolous

conduct precluded the Court from making a decision regarding whether his conduct

violated the Code of Professional Conduct. The Court disagreed, stating:

> The doctrine of res judicata renders final judgments conclusive only
>
> when both actions involve the same parties (or those in privity with them),

> identical issues to which the evidence is directed, and the identical quantum of proof necessary to render both the original and subsequent judgments. *Ohio State Bar Assn. v. Weaver*, 41 Ohio St.2d 97, 99-100, 322 N.E.2d 665 (1975). Applying those standards, we held in *Weaver* that an attorney's acquittal on criminal charges does not preclude charges of professional misconduct under principles of res judicata, because those proceedings do not share the same parties, purpose, or quantum of proof. *Id.* There is likewise no shared parties, purpose, or quantum of proof between the motion for sanctions for frivolous conduct in the Seeley litigation and this disciplinary proceeding. Consequently, the doctrine of res judicata has no application here.

*Id.* at ¶32. The purpose and quantum of proof necessary for the appellee's civil counterclaim for nuisance are not the same as those required for the within zoning regulation and IPMC violation matters. In addition, there is a distinction between the remedies sought in each. In the civil nuisance matter, the potential penalties were not criminal in nature, but rather, were injunctive relief and/or a tax on the nuisance. However, the remedies in the within matter are criminal-type penalties, including criminal fines.

{¶20} The decision in the case of *State v. Felter,* 1999 WL 727096 (6th Dist. Sept. 17, 1999), appl. not allowed by *State v. Felter,* 87 Ohio St.3d 1490 (Jan. 19, 2000), is instructive. In *Felter,* the appellee was indicted in common pleas court on three counts of child endangerment. He moved for dismissal pursuant to the doctrines of res judicata and collateral estoppel based upon a juvenile case that had been initiated by the county department of human services involving the same allegations. The juvenile court had

found that abuse was not proven and dismissed the juvenile case. The appellee argued that the common pleas court should dismiss the child endangerment charges based upon the doctrines of res judicata and/or collateral estoppel. The appellant argued that the juvenile matter was a civil case, and as such the appellee had not been placed in jeopardy. The trial court agreed with the appellee and dismissed the charges, but the court of appeals reversed, stating:

> In the criminal context, collateral estoppel has been defined to mean that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson* (1970), 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469. See, also, *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 443, 683 N.E.2d 1112. Although equitable estoppel originated as a civil doctrine, it was adopted as a rule of federal criminal law as early as 1916. Today, it is also viewed as being "embodied in the Fifth Amendment guarantee against double jeopardy." *Ashe, supra* at 445. The doctrine of collateral estoppel and the guarantee against double jeopardy of the Fifth Amendment are applicable to the states through the Fourteenth Amendment to the United States Constitution. *Lovejoy, supra,* at 443, 683 N.E.2d 1112.

*Id.* at *1. The court went on to distinguish between the application of res judicata and collateral estoppel in civil versus criminal cases:

> Since the doctrine of criminal collateral estoppel is derived from the Double Jeopardy Clause of the Fifth Amendment, the defendant must have

been placed in jeopardy in a prior criminal case for the doctrine to be applicable in the current action. *Ashe, supra* at 443; *State v. Phillips* (1995), 74 Ohio St.3d 72, 80, 656 N.E.2d 643, reconsideration denied (1995), 74 Ohio St.3d 1485, 657 N.E.2d 1378; and *In re Susi* (1973), 38 Ohio App.2d 73, 76, 313 N.E.2d 422, certiorari denied, *Moretti v. Ohio* (1975), 420 U.S. 928, 95 S.Ct. 1126, 43 L.Ed.2d 398.

The doctrine is also applicable in a criminal action where the prior proceeding was civil in nature. *Yates v. United States* (1957), 354 U.S. 298, 336, 77 S.Ct. 1064, 1 L.Ed.2d 1356, overruled on other grounds in *Burks v. United States* (1978), 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1. However, in those cases, the civil action was similar to a criminal action and a criminal-type penalty was imposed causing double jeopardy to attach in the civil case. *Hudson v. United States* (1997), 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450. Whether the civil action sanction is a criminal penalty is a matter of statutory construction, a legal issue for the court to determine. *Id.* and *One Lot Emerald Cut Stones and One Ring v. United States* (1972), 409 U.S. 232, 237, 93 S.Ct. 489, 34 L.Ed.2d 438.

*Id.* at *2. The *Felter* court found that the juvenile statutes governing the termination of parental rights did not impose criminal-type penalties, and therefore held that the juvenile court action was not the type of action in which double jeopardy attached. Because no criminal penalties were involved, "the doctrine of collateral estoppel is not applicable in the criminal action to bar appellee's prosecution for a criminal offense arising out of the

same conduct at issue in the juvenile case," and the court of appeals therefore reversed the decision of the trial court.

{¶21} In the case sub judice, the trial court correctly found that the penalties at issue in the civil case were not criminal in nature; rather, they included possible injunctive relief and a tax on the nuisance. As the appellant was not subject to criminal-type penalties in the civil matter, the doctrines of res judicata and collateral estoppel do not apply to bar the within cases, which arise from violations of the appellee's zoning regulations and maintenance codes. The trial court correctly denied the appellant's motion to dismiss, and her first assignment of error is without merit.

## ASSIGNMENTS OF ERROR II & III

{¶22} The appellant argues in assignments of error numbers two and three that the decision of the trial court was not supported by sufficient evidence, and was against the manifest weight of the evidence. We disagree.

### Standard Of Review

{¶23} Sufficiency of the evidence was addressed by the Ohio Supreme Court in *State v. Worley,* 2021-Ohio-2207:

> The test for sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, and following *Jackson v. Virginia*, 443

U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). " 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs." R.C. 2901.05(E). A sufficiency-of-the-evidence challenge asks whether the evidence adduced at trial "is legally sufficient to support the jury verdict as a matter of law." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219.

*Id.* at ¶57. Thus, a review of the constitutional sufficiency of evidence to support a criminal conviction requires a court of appeals to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

**{¶24}** Manifest weight of the evidence, on the other hand, addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 1997–Ohio–355. The Court stated:

Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.) Black's, *supra,* at 1594.

*Id.* at 387. The Court stated further:

> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

**{¶25}** In addition, "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**Analysis**

{¶26}  The appellee presented the testimony of its Code Enforcement Officer, who gave extensive and detailed testimony regarding the state of the appellant's property. He identified photographs he took during his inspection of the appellant's property that depicted numerous vehicles parked on the property, many without license plates, and many of which appeared to be "junk" vehicles; a car lift; numerous boats; a couple of tow trucks; a dump bed; unsanitary conditions, including debris, chipping paint, a gutter that had fallen down, a hole in the area over the porch, bare wood where there should have been siding, a fallen soffit, peeling and chipping paint, and structures with exposed wood on exterior walls. The appellant also testified regarding her relationship with the appellee, and why her property was not in violation of zoning regulations and maintenance codes.

{¶27}  Based upon the evidence presented, the trial court found that the appellant was guilty of four of the alleged violations, and not guilty of two of the alleged violations. The trial court, as the trier of fact, was in the best position to ascertain the credibility of the witnesses and evaluate the evidence presented. We find that the evidence adduced at trial is legally sufficient to support the findings of the trier of fact as a matter of law. Further, there is no evidence that the trial court lost its way such that a manifest miscarriage of justice resulted. Accordingly, we find appellant's assignments of error numbers two and three to be without merit.

## CONCLUSION

{¶28} Based upon the foregoing, the appellant's assignments of error numbers one, two, and three are overruled, and the decision of the Licking County Municipal Court is hereby affirmed.

By: Baldwin, P.J.

Hoffman, J. and

King, J. concur.